2010 ME 28

STATE of Maine

v.

Morris D. MURPHY.

Supreme Judicial Court of Maine.

Argued: Jan. 14, 2010.
Decided: March 25, 2010.

David A. Weyrens, Esq. (orally), The Hallett Law Firm, Portland, ME, for Morris Murphy.

Stephanie Anderson, District Attorney, Jonathan R. Liberman, Student Intern (orally), Jennifer Norbert, Asst. Dist. Atty., Portland, ME, for the State of Maine.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN,* and JABAR, JJ.

LEVY, J.

[¶ 1]  Morris D. Murphy appeals from a judgment of conviction of operating while

* Although not available at oral argument, Justice Gorman participated in this opinion. *See* M.R.App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

license suspended or revoked (Class E), 29–A M.R.S. § 2412–A(1–A)(D) (2008), entered in the Unified Criminal Docket (Cumberland County, *Beaudoin, J.*) upon a finding of guilty by a jury. Murphy contends that the trial court violated his Sixth Amendment right to confront witnesses against him by admitting in evidence, over his objection, a written certificate from the Secretary of State as prima facie proof that a notice of his suspension had been sent to him—a necessary element for conviction. Based on the United States Supreme Court's recent decision in *Melendez–Diaz v. Massachusetts,* —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), Murphy argues that the Confrontation Clause barred the admission of the certificate because it was testimonial hearsay. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2]  We review the evidence presented at trial in the light most favorable to the State. *See State v. Bouchard,* 2005 ME 106, ¶ 10, 881 A.2d 1130, 1134.

[¶ 3]  On October 15, 2008, Officer Christopher Woodcock, a police officer with the Cumberland Police Department, observed a vehicle stop at a road that intersects Route 100 in Gray. Believing that he had pulled the same driver over days earlier for operating after suspension, Officer Woodcock turned his vehicle around and increased his speed in an attempt to view the vehicle's license plate number. He soon regained visual contact with the vehicle and eventually came upon it, with Murphy still inside, parked in a driveway. After running the car's license plate, Officer Woodcock confirmed that Murphy's license was suspended. He made contact with Murphy and obtained his license, registration, and insurance information.

[¶ 4]  Murphy was charged with, and pleaded not guilty to, operating while license suspended or revoked (Class E), 29–A M.R.S. § 2412–A(1–A)(D),[1] and unlawful use of a license (Class E), 29–A M.R.S. § 2102(1) (2009). Before trial, Murphy moved in limine to exclude from evidence a certificate issued by the Secretary of State, asserting that the admission of the certificate would violate his Sixth Amendment right to confront witnesses.[2] The court denied Murphy's motion.

1.  Title 29–A M.R.S. § 2412–A(1–A) (2008) has since been amended. P.L. 2009, ch. 297 § 1 (effective Sept. 12, 2009) (codified at 29–A M.R.S. § 2412–A(1–A) (2009)). Title 29–A M.R.S. § 2412–A(1–A) states in relevant part:

    **1–A. Offense; penalty.** A person commits operating while license suspended or revoked if that person:
    **A.** Operates a motor vehicle on a public way or in a parking area when that person's license has been suspended or revoked, and that person:
    **(1)** Has received written notice of a suspension or revocation from the Secretary of State or a court;
    **(2)** Has been orally informed of the suspension or revocation by a law enforcement officer or a court;
    **(3)** Has actual knowledge of the suspension or revocation;

    **(4)** Has been sent written notice in accordance with section 2482 or former Title 29, section 2241, subsection 4; or
    **(5)** Has failed to answer or to appear in court pursuant to a notice or order specified in section 2605 or 2608.
    . . . .
    **D.** Violates paragraph A, the suspension was not for OUI or an OUI offense and the person has one or more prior convictions for violating this section.
    Except as otherwise provided, operating while license suspended or revoked is a Class E crime, which is a strict liability crime as defined in Title 17–A, section 34, subsection 4–A.

2.  The certification document, commonly referred to as the "blue seal document," stated:
    I, the Secretary of State, of the State of Maine, certify that

[¶ 5] At trial, the State and Murphy stipulated that Murphy's license was suspended on October 15, 2008, when Officer Woodcock pulled him over. The State's case consisted of Officer Woodcock's testimony and three exhibits that were admitted in evidence: (1) Murphy's driver's license, which was admitted without objection; (2) the certificate from the Secretary of State; and (3) a copy of the letter from the Bureau of Motor Vehicles that notified Murphy of his suspension and the opportunity for a hearing. Over Murphy's renewed objection, the court admitted in evidence the certificate and the copy of the suspension notification letter. The certificate stated, among other things, that according to the Secretary of State's records regarding operators' licenses and registrations, "[n]otice of suspension was sent [to Murphy] by regular mail, no later than September 5, 2008 in accordance with the provisions of 29–A MRSA Section 2482(1)." The copy of the suspension notification letter established the same fact.

[¶ 6] The jury found Murphy guilty of both counts. On the count of operating while license suspended or revoked, he was sentenced to forty-eight hours in the county jail and a $500 fine, and on the count of unlawful use of a license, a twenty-four-hour concurrent jail sentence was imposed. This appeal followed.

## II. DISCUSSION

[¶ 7] On two previous occasions we have held that the admission of a sworn certificate by the Secretary of State as prima facie proof that an operator had been sent written notice of the suspension or revocation of his or her right to operate does not violate the Confrontation Clause of the Sixth Amendment. *See State v. Tayman,* 2008 ME 177, ¶ 24, 960 A.2d 1151, 1158; *see also State v. Morin,* 598 A.2d 170, 172 (Me.1991). Murphy contends that admission of the certificate violated his Sixth Amendment rights because it was testimonial hearsay and that he did not have an opportunity to cross-examine the Secretary of State. He urges us to conclude that our prior decisions, which involved the admission of certificates nearly identical to the one at issue in this case, have been effectively overruled by the United States Supreme Court's recent decision in *Melendez–Diaz,* 129 S.Ct. 2527. In *Melendez–Diaz,* the Court's majority held that certificates from the state's chemists reporting that substances found on a defendant were determined, after laboratory analysis, to be cocaine, were a

---

the office of the Secretary of State is the legal repository of the Great Seal of the State of Maine and also custodian of the records relating to the revocation, restoration and suspension of operators' licenses and registrations, and that the paper to which this is attached is a true copy from the records of this office.
I further certify that, according to our records the license or right to operate of
Morris D. Murphy, whose date of birth is July 9, 1958, was suspended effective September 15, 2008 by the Secretary of State Notice of suspension was sent by regular mail, no later than September 5, 2008 in accordance with the provisions of 29–A MRSA Section 2482(1).

Morris D. Murphy's right to operate was under suspension on October 15, 2008 because the statutory conditions for restoration had not been satisfied.
I further certify that the attached copy is a true copy of Morris D. Murphy's driving record as maintained by the Secretary of State, as of this date.
Although the last paragraph in the certificate referred to an attached copy of Murphy's driving record, no other document was attached to the certificate. However, a third exhibit, a copy of the letter entitled "Notice of Suspension and Opportunity for Hearing" was also admitted in evidence over Murphy's objection.

form of testimony that triggered the defendant's constitutional right of confrontation. *Id.* at 2530, 2542. The State responds that our earlier decisions remain binding precedent because "[t]the maintenance of driving records does not entail the exercise of judgment and risks of error that take place in a laboratory test."

[¶ 8] We proceed by (A) reviewing recent developments in Confrontation Clause principles applicable to this case; (B) considering whether our decisions in *Tayman* and *Morin* retain their vitality after the Supreme Court's decision in *Melendez–Diaz*; and (C) concluding that Murphy's Sixth Amendment rights were not violated.

## A. Confrontation Clause

■ [¶ 9] The Sixth Amendment's Confrontation Clause, which is applied to states through the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Ohio v. Roberts,* the Supreme Court held that the Confrontation Clause is not violated by hearsay evidence that bears adequate "indicia of reliability." 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (quotation marks omitted). The Court concluded in *Roberts* that the transcribed testimony of a witness from a preliminary hearing was admissible at the trial where the witness was unavailable and the defendant had had the opportunity to cross-examine the witness at the preliminary hearing. *Id.* at 58, 73, 100 S.Ct. 2531.

[¶ 10] After *Roberts,* we considered whether the Confrontation Clause prohibited the State from establishing that a defendant had been sent notice that his license or right to operate had been suspended by admitting a certificate of the Secretary of State, which summarized the content of records, and a copy of the suspension notification letter. *Morin,* 598 A.2d at 172. The defendant in *Morin* did "not suggest that the Secretary of State or a deputy must testify at every trial; he argu[ed], however, that the confrontation clause requires at a minimum that certified copies of the actual records, rather than a certificate summarizing the contents of the records, be offered." *Id.* at 172. Applying the reliability standard articulated in *Roberts,* we concluded that the certificate and the letter at issue were "inherently trustworthy as a data compilation of a public agency setting forth its regularly conducted and recorded activity" and, thus, their admission did not offend the Confrontation Clause. *Id.* (quotation marks omitted).

[¶ 11] More recently in *Crawford v. Washington,* the Supreme Court reconsidered the notion that the reliability of hearsay evidence may be sufficient to protect a defendant's Confrontation Clause rights. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). There, the Court held that the admission of a tape-recorded statement made to police by a woman whose husband had stabbed a man violated the husband's Confrontation Clause rights. *Id.* at 68–69, 124 S.Ct. 1354. The Court explained that the underlying purpose of the Confrontation Clause is to prevent the use of ex parte testimonial statements as evidence against the accused, and that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54, 124 S.Ct. 1354. The Confrontation Clause was thus deemed to guarantee the opportunity for cross-examination as the procedural mechanism for testing the reliability of evidence:

To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

*Id.* at 61, 124 S.Ct. 1354; *see also State v. Gorman,* 2004 ME 90, ¶ 46, 854 A.2d 1164, 1175 (recognizing "that statements admissible under an exception to the hearsay rule may be inadmissible when tested against the Confrontation Clause ... because Confrontation Clause analysis differs from hearsay rule analysis").

[¶ 12] *Crawford* treated "testimony" as being "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." 541 U.S. at 51, 124 S.Ct. 1354 (quotation marks omitted). Several types of testimonial statements subject to the right of confrontation were identified:

Various formulations of this core class of testimonial statements exist: [(1)] *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[;] ... [(2)] extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[;] ... [and (3)] statements that were made un-

der circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51–52, 124 S.Ct. 1354 (quotation marks omitted).

[¶ 13] We considered and applied *Crawford* in the context of a prosecution for operating after a defendant's license was suspended in *Tayman,* 2008 ME 177, ¶ 1, 960 A.2d at 1152. The trial court in that case had admitted two exhibits in evidence: (1) a record of docket entries from the Violations Bureau that was attested to by the clerk of the Bureau; and (2) a certificate from the Secretary of State, nearly identical to the one in this case.[3] *Id.* ¶ 3, 960 A.2d at 1153. After considering *Crawford,* we concluded that the defendant's Confrontation Clause rights were not violated with regard to the Violations Bureau docket entries because such documents "are akin to business or public records, and ... merely reflect the routine cataloging of administrative events." *Id.* ¶ 21, 960 A.2d at 1157. Our opinion explained that the "docket entries at issue here represent the mere contemporaneous documentation of regular business activity within the Violations Bureau and do not contain assertions or accusations made after the fact and in preparation for litigation."[4] *Id.* "To require live testimony regarding the ministerial acts at issue in this instance would not serve to promote the fundamental constitutional protections identified in *Crawford*"[5] *Id.* ¶ 22, 960 A.2d at 1158.

---

3. The notice of suspension in the certification stated: "[N]otice of suspension was sent by regular mail to Richard E. Tayman, Jr. ... by the Violations Bureau of the District Court, pursuant to 29-A MRSA Section 2608." *State v. Tayman,* 2008 ME 177, ¶ 3, 960 A.2d 1151, 1153 (quotation marks omitted).

4. *See also State v. Knight,* 2009 ME 32, ¶¶ 4, 10, 967 A.2d 723, 724, 725 (holding that the

admission in evidence of a certifying document from the Secretary of State "that its history records indicated that notice of suspension was sent by regular mail" to the defendant did not violate the Confrontation Clause).

5. *Cf. State v. Francis,* 610 A.2d 743, 745 (Me. 1992) (concluding that admission of hospital records in evidence against the defendant did

[¶ 14] We also found no constitutional defect with the trial court's admission of the Secretary of State's certificate, observing that it "serves only to confirm the authenticity of the underlying records of the Bureau, which themselves contain only routine, nontestimonial information." *Id.* ¶ 24, 960 A.2d at 1158. Consequently, we found nothing in the admission of the certificate that offended *Crawford.*[6] *Id.* ¶ 25, 960 A.2d at 1158.

[¶ 15] More recently in *Melendez–Diaz,* the Supreme Court applied the new *Crawford* standard to a drug prosecution in which the defendant asserted that his right of confrontation was violated by the admission of the government's chemists' certificates reporting that their forensic analysis identified seized substances as cocaine. 129 S.Ct. at 2530, 2542. The Court's majority observed that the certificates were "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." *Id.* at 2532 (quotation marks omitted). Further, the certificates "certainly provided testimony *against* petitioner, proving one fact necessary for his conviction—that the substance he possessed was cocaine." *Id.* at 2533.

[¶ 16] In response to the government's claim in *Melendez–Diaz* that the certificates represented "neutral scientific testing," thereby avoiding Confrontation Clause problems, the majority reasoned that affording the accused the right to directly confront the chemists would have beneficial effects: (1) ensuring accurate forensic analysis by deterring fraudulent analysis; (2) "weed[ing] out" incompetent analysis; and (3) providing defendants with an opportunity to explore the analysts' methodologies. *Id.* at 2536–37 (quotation marks omitted). The majority concluded that there was "little reason to believe that confrontation will be useless in testing analysts' honesty, proficiency, and methodology." *Id.* at 2538.

[¶ 17] The majority opinion also rejected the claim made in the dissenting opinion, joined by four justices, that the forensic analysts' certificates were akin to a clerk's certificate authenticating an official record. *Id.* at 2538–39. The majority characterized the parameters of a clerk's traditional authority to issue a certificate authenticating records as not including the authority to express the clerk's interpretation of the records themselves. *Id.* at 2539.

**B. The Vitality of *Tayman* After *Melendez–Diaz***

■ [¶ 18] Although *Crawford* described the types of statements that are generally considered testimonial, the Court left "for another day ... to spell out a comprehensive definition of testimonial." 541 U.S. at 68, 124 S.Ct. 1354 (quotation marks omitted). The Court acknowledged that in refusing to clearly define testimonial, "interim uncertainty" would exist regarding the distinction between testimonial and nontestimonial evidence. *Id.* at 68 n. 10, 124 S.Ct. 1354. *Crawford* did not resolve the issue of whether public records offered against a defendant at trial implicate the defendant's Confrontation Clause rights. *See Crawford,* 541 U.S. at 76, 124 S.Ct. 1354 (Rehnquist, C.J., dissenting in part, but concurring in the judgment) ("To

---

not violate his right to confront witnesses because "[t]reating physicians have every reason to be truthful, accurate, and complete when preparing hospital records").

6. Because the defendant in *Tayman* did not object to the admission of the certificate at trial, our opinion applied an obvious error standard of review. *Tayman,* 2008 ME 177, ¶ 23, 960 A.2d at 1158.

its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records."). The question thus presented is whether the Court's decision in *Melendez–Diaz* refines the definition of what is testimonial to encompass public records, such as those admitted in evidence at Murphy's trial.[7]

[¶ 19] Read expansively, *Melendez–Diaz* might be interpreted as extending the definition of testimony beyond sworn certificates addressing scientific analysis prepared for purposes of a criminal prosecution, to include sworn certificates that authenticate and summarize routine governmental records. The opinion contains conflicting signals on this point. The Court's majority recognized that, by their nature, business and public records are not testimonial:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the

purpose of establishing or proving some fact at trial—they are not testimonial. *Melendez–Diaz*, 129 S.Ct. at 2539–40; *see also Crawford*, 541 U.S. at 56, 124 S.Ct. 1354 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."). The Court's majority in *Melendez–Diaz* also suggested, however, that the information that may be set forth in a clerk's certificate is quite restricted:

> He was permitted to certify to the correctness of a copy of a record kept in his office, but had no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.

129 S.Ct. at 2539 (quotation marks omitted).[8] Here, the Secretary of State's certificate attests to the authenticity of underlying public records, but also reports what the records show-that the required notification of suspension was sent to Murphy. Read expansively, *Melendez–Diaz* might be construed as requiring us to conclude that this portion of the certificate is testi-

---

7. Two courts have adopted the reasoning of *Melendez–Diaz* and held that certificates attesting to the fact that a government official searched particular records and failed to find either a permit or license were testimonial and violated a defendant's right to confrontation. *See Tabaka v. District of Columbia*, 976 A.2d 173, 175 (D.C.2009) (holding that a certificate from a motor vehicles official, which certified to the absence of any records indicating that appellant was issued an operator's permit, was testimonial); *see also Washington v. Florida*, 18 So.3d 1221, 1224 (Fla.Dist.Ct. App.2009) (stating that the certificate was: (1) accusatory; (2) "introduced to establish an element of the crime"; (3) "prepared at the request of law enforcement as part of its investigation"; and (4) "evaluative in the sense that it represent[ed] not simply the production of an existing record, but an assertion regarding the results of an individual's

search of a database or databases"). Another court has held that a defendant's right to confrontation was not violated at the punishment stage of trial when an exhibit was admitted in evidence that contained a "department of corrections social and criminal history [ evaluation of the defendant] prepared by an unnamed department employee." *Grey v. Texas*, 299 S.W.3d 902, 906, 910 (Tex.App.2009). The court concluded that the "criminal history summary, not having been made in anticipation of prosecutorial use, was not testimonial." *Id.* at 910.

8. *See generally* G. Michael Fenner, *Today's Confrontation Clause (After* Crawford *and* Melendez–Diaz), 43 Creighton L.Rev. 35, 61 (2009) ("There are lots of business records that are specifically prepared to be used in criminal trials—to 'testify' against the accused in the event there is a criminal trial.").

monial.[9] For several reasons, we are not persuaded to embrace that construction.

▮ [¶ 20] First, the application of the Confrontation Clause to certificates like the one at issue in this case was neither raised by the facts nor presented for decision in *Melendez–Diaz*. Therefore, to the extent that the majority opinion discussed clerks' certificates regarding public records, it is "obiter dictum [that] … is not entitled to be given authoritative precedential value." *In re O'Donnell's Express*, 260 A.2d 539, 544 (Me.1970) (quotation marks omitted). "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." *Humphrey's Ex'r v. United States*, 295 U.S. 602, 627, 55 S.Ct. 869, 79 L.Ed. 1611 (1935) (quotation marks omitted).

[¶ 21] Second, the reasoning employed in *Melendez–Diaz*, which resulted in the holding that the chemists' certificates were testimonial, does not apply here. The chemists' certificates were substituted for live, in-court expert testimony prepared in an effort to secure the defendant's criminal conviction. In contrast, the certificates of the Secretary of State, at issue here and considered in *Morin* and *Tayman*, do not involve expert analysis or opinion. Rather, they report neutral information by the public official charged with the custody of that information. The certificates do not contain "testimony" of the Secretary of State's personal knowledge that the required notice of suspension was mailed; rather, the certificate attests to his or her knowledge of what routinely-maintained public records indicate. This distinction is important because the certificate communicates no facts or information beyond that which is established by the notice of suspension letter.

[¶ 22] Third, neither the certificate nor the records to which it refers are primarily maintained and employed for purposes of criminal prosecution. Identical certificates are routinely prepared for nonprosecutorial purposes, such as administrative motor vehicle proceedings and insurance-related inquiries.

▮ [¶ 23] Finally, in determining the reach of the *Melendez–Diaz* holding, we must also account for the procedural protection that the Court recognized as inherent in the right of confrontation. The majority opinion emphasized the importance of having the procedural right of confrontation attach to an issue as substantive as the methodology a chemist employs to analyze a chemical compound. Such methodology involves "the exercise of judgment and presents a risk of error that might be explored on cross-examination." *Melendez–Diaz*, 129 S.Ct. at 2537. Thus, the value of allowing cross-examination on this topic is essential to assuring justice not for its own sake, but because of its functional, truth-seeking value. Cross-examination guarantees that

> the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives

9. Within the context of Murphy's appeal, an expansive reading of *Melendez–Diaz* would precipitate a harmless error analysis. *See State v. Warren*, 1998 ME 136, ¶ 17, 711 A.2d 851, 857 ("When a trial error is of constitutional magnitude, the appropriate harmless error inquiry is whether, after a review of the whole record, we are satisfied beyond a reasonable doubt that the error did not contribute to the verdict obtained.").

his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

[¶ 24] Cross-examination has far less utility with respect to the information contained in the certificate at issue here. The Bureau's collection and maintenance of motor vehicle license-related information are largely automated, and the data collected are not subject to any serious interpretation, judgment, or analysis. Our constitutional analysis should not ignore the context in which these records are produced. Because neutral, bureaucratic information from routinely maintained public records is not obtained by use of specialized methodology, there is little, if any, practical benefit to applying the crucible of

cross-examination against those who maintain the information. *See Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) ("The right to cross-examination, protected by the Confrontation Clause, thus is essentially a 'functional' right designed to promote reliability in the truth-finding functions of a criminal trial.").

[¶ 25] Although *Crawford* overruled *Ohio v. Roberts,* both state [10] and federal [11] courts have not completely discarded reliability as a factor when determining whether public records, such as those admitted in this case, are testimonial. *Melendez-Diaz* did not disaffirm applying such a rationale in connection with public records. It is our reasoned judgment that reliability

---

10. *See Arizona v. King,* 213 Ariz. 632, 146 P.3d 1274, 1280 (Ct.App.2006) (holding that driving records were nontestimonial); *see also People v. Saffold,* 127 Cal.App.4th 979, 26 Cal.Rptr.3d 190, 193 (2005) (concluding that proof of service of a domestic relations restraining order was nontestimonial); *Colorado v. Shreck,* 107 P.3d 1048, 1060–61 (Colo. Ct.App.2004) (determining that documentary evidence showing prior convictions and affidavits used to establish chain of custody for certain documents were nontestimonial); *Iowa v. Shipley,* 757 N.W.2d 228, 237–38 (Iowa 2008) (holding that a certified abstract of a defendant's driving record was nontestimonial); *Kansas v. Dukes,* 38 Kan.App.2d 958, 174 P.3d 914, 917–18 (2008) (holding that the introduction of driving records without a witness did not violate a defendant's right to confrontation); *Jasper v. Virginia,* 49 Va.App. 749, 644 S.E.2d 406, 410–11 (2007) (holding that the DMV transcript used to prove revocation and notice was nontestimonial); *Washington v. Kronich,* 160 Wash.2d 893, 161 P.3d 982, 986–87 (2007) (holding that the admission of a certified document stating that defendant's license was suspended was nontestimonial); *Washington v. Kirkpatrick,* 160 Wash.2d 873, 161 P.3d 990, 996–97 (2007) (holding that a certified letter verifying that a defendant did not have a valid driver's license was nontestimonial and that "Washington courts have long recognized the

inherent reliability and admissibility of driving records").

11. *See United States v. Garcia,* 452 F.3d 36, 41–42 (1st Cir.2006) (concluding that warrants of deportation were nontestimonial hearsay); *see also United States v. Ballesteros-Selinger,* 454 F.3d 973, 975 (9th Cir.2006) (holding that a memorandum of oral decision issued by an immigration judge at a deportation hearing was nontestimonial); *United States v. Valdez-Maltos,* 443 F.3d 910, 911 (5th Cir.2006) (per curiam) (concluding that warrants of deportation were nontestimonial), *cert. denied,* 549 U.S. 916, 127 S.Ct. 265, 166 L.Ed.2d 205 (2006); *United States v. Cantellano,* 430 F.3d 1142, 1145 (11th Cir.2005) (concluding that warrants of deportation were nontestimonial), *cert. denied,* 547 U.S. 1034, 126 S.Ct. 1604, 164 L.Ed.2d 325 (2006); *United States v. Weiland,* 420 F.3d 1062, 1077 (9th Cir.2005) (concluding that records of prior convictions were nontestimonial), *cert. denied,* 547 U.S. 1114, 126 S.Ct. 1911, 164 L.Ed.2d 667 (2006); *United States v. Bahena-Cardenas,* 411 F.3d 1067, 1075 (9th Cir.2005) ("We conclude that the warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter."), *cert. denied,* 547 U.S. 1056, 126 S.Ct. 1652, 164 L.Ed.2d 398 (2006).

should not be ignored when determining whether public records should be treated as testimonial. A reliability-based approach to public records is harmonious with both the purpose of the Confrontation Clause right and the modern realities associated with proving the content of routinely maintained motor vehicle records.

## C. Conclusion

[¶ 26] We thus conclude that our decision in *Tayman* remains valid precedent and should control our decision in this case. As in *Tayman*, the Secretary of State's certificate authenticated and summarized routine motor vehicle records that were not primarily maintained for use as evidence in criminal prosecutions. Further, the certificate was accompanied by an actual record that corroborated the summary contained in the certificate. Under these circumstances, Murphy's rights secured by the Confrontation Clause of the Sixth Amendment were not violated.

The entry is: Judgment affirmed.