[No. 63442-9-I. Division One. September 20, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS SCOTT
JASPER, *Appellant*.

522

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *James M. Whisman* and *Jennifer H.S. Atchison, Deputies*, for respondent.

¶1 DWYER, C.J. — The confrontation clause of the Sixth Amendment prohibits the admission of an affidavit containing testimonial statements absent an opportunity for the defendant to cross-examine the witness. An affidavit attesting that the affiant performed a diligent search of records and that the records revealed that the defendant's license to drive was suspended or revoked on a particular day contains testimonial assertions. Thus, such an affidavit is inadmissible where the defendant is not provided an opportunity to cross-examine the witness. An affidavit containing such statements was admitted into evidence in the trial of Douglas Jasper. Accordingly, we reverse Jasper's conviction for driving while license suspended or revoked in the third degree.

¶2 Also at issue is whether the trial court erred by responding to jury inquiries without notifying the attorneys

or Jasper. Pursuant to CrR 6.15, the trial court is obligated to notify the parties about a jury inquiry and allow the parties to suggest an appropriate response. However, contrary to Jasper's contention, the trial court's failure to notify the parties in this instance did not violate Jasper's constitutional right to be present during trial proceedings because the jury's inquiries involved only legal, rather than factual, matters. The trial court's error was solely in not following the dictates of the court rule. This error, however, was harmless. Thus, we affirm Jasper's conviction for felony hit-and-run driving.

I

¶3 On February 14, 2008, Jasper's vehicle crossed the center line of a roadway and collided with a car travelling in the opposite direction. After Jasper's vehicle came to a stop against an embankment, he exited his vehicle, checked on the occupants of the other car, and then began walking away from the scene of the collision. The driver of the other vehicle was pinned inside the car and was subsequently treated for a broken arm. Jasper was arrested a few blocks from the scene of the collision.

¶4 Jasper was charged with felony hit and run, a violation of RCW 46.52.020, and with driving while license suspended or revoked in the third degree, a violation of RCW 46.20.342(1)(c).

¶5 At trial, a police officer testified that, at the time of Jasper's arrest, Jasper admitted that his license was suspended. The State offered as an exhibit an affidavit from a legal custodian of driving records and two Department of Licensing (DOL) records. The two records indicate that DOL mailed Jasper two notices stating that his license would be suspended if he did not appropriately respond to citations (1) for driving without liability insurance and (2) for a registration violation. The affidavit states, "After a diligent search, our official record indicates that the status on February 14, 2005, was: . . . Suspended in the third

degree."[1] Jasper objected to the admission of the affidavit on confrontation clause grounds. The trial court admitted all of the documents.

¶6 Jasper testified. He explained that he had hit his head in the collision and, as a result, he was dazed and confused. He testified that he knew his license was suspended on the day of the collision.

¶7 During its deliberations, the jury submitted two inquiries to the trial court. The first requested clarification of one of the jury instructions; specifically, the jury inquired whether a person's obligation to fulfill certain duties after being involved in a motor vehicle collision was "dependent on [the individual's] mental, emotional, or physical condition." The second inquiry requested a definition of the "spirit of the law," a phrase that had been used numerous times by defense counsel in closing argument. Without notifying the prosecutor or Jasper's counsel of the jury's questions and without the prosecutor, Jasper, or his counsel being present, the trial court promptly responded identically to both of the jury's questions in writing: "Please

---

[1] The affidavit states:

The information in this report pertains to the driving record of:

Lic. #: [ ] 
Name: JASPER, DOUGLAS SCOTT 
 10724 SUMMIT LK RD NW 
 OLYMPIA WA 98502

Birthdate: November 11, 1960 
Eyes: BLU Sex: M 
Hgt: 5 ft 11 in Wgt: 175 lbs 
License Issued: September 15, 2005 
License Expires: November 11, 2009

After a diligent search, our official record indicates that the status on February 14, 2005, was:

**Personal Driver License Status:**
• Suspended in the third degree

**Commercial Driver License Status:**

**The following also applied:**

PDL Attachments: CDL Attachments:
• Notice of Suspension June 28, 2007

 Having been appointed by the Director of the Department of Licensing as legal custodian of driving records of the State of Washington I certify under penalty of perjury that such records are official, and are maintained within the Department of Licensing.
 /s

re-read your instructions and continue deliberating. No further instructions will be given to this question."

¶8 The jury subsequently convicted Jasper as charged. Jasper appeals.

## II

¶9 Jasper first contends that the admission of the affidavit of the DOL record custodian violated his Sixth Amendment right to confrontation. We agree.

¶10 The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "[T]he 'principal evil' at which the clause was directed was the civil-law system's use of ex parte examinations and ex parte affidavits as substitutes for live witnesses in criminal cases." *State v. Lui*, 153 Wn. App. 304, 314, 221 P.3d 948 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 50, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)), *review granted*, 168 Wn.2d 1018, 228 P.3d 17 (2010). Such a practice denies the defendant a chance to test accusers' assertions "in the crucible of cross-examination." *Crawford*, 541 U.S. at 61.

¶11 Not every out-of-court statement used at trial implicates the core concerns of the confrontation clause. Rather, the scope of the clause is limited to " 'witnesses' against the accused—in other words, those who 'bear testimony.' 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford*, 541 U.S. at 51 (alteration in original) (citation omitted) (quoting 2 NOAH WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)). Thus, the confrontation clause gives defendants the right to confront those who make testimonial statements against them.[2] *Crawford*, 541 U.S. at 53-54.

---

[2] A limitation on the right to confrontation that existed at common law—inapplicable here—applies when a witness is unavailable and the accused had a

¶12 The Court declined to offer a comprehensive explanation of what makes a statement "testimonial," but it listed three possible formulations for the "core class" of testimonial statements covered by the confrontation clause:

"[(1)] *ex parte* in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; [(2)] "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; [(3)] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Crawford*, 541 U.S. at 51-52 (third alteration in original) (citations omitted) (quoting *White v. Illinois*, 502 U.S. 346, 365, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992) (Thomas, J., concurring in part)).

¶13 Last year, in *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), the United States Supreme Court further honed the analysis of evidence's testimonial character. The defendant therein was charged with distributing and trafficking in cocaine. *Melendez-Diaz*, 129 S. Ct. at 2530. The trial court admitted into evidence three "certificates of analysis," sworn to by laboratory analysts before a notary public, which stated that the seized bags had been " 'examined with the following results: The substance was found to contain: Cocaine.' " *Melendez-Diaz*, 129 S. Ct. at 2531.

¶14 A five-member majority held, in a "rather straightforward application of [the] holding in *Crawford*," that the certificates were inadmissible. *Melendez-Diaz*, 129 S. Ct. at 2533. The Court determined that the certificates were "quite plainly affidavits: 'declaration[s] of facts written

prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53-54. The confrontation clause "also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 60 n.9.

down and sworn to by the declarant before an officer authorized to administer oaths.' " *Melendez-Diaz*, 129 S. Ct. at 2532 (alteration in original) (quoting BLACK'S LAW DICTIONARY 62 (8th ed. 2004)). The affidavits constituted testimonial statements because they were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Melendez-Diaz*, 129 S. Ct. at 2532 (quoting *Davis v. Washington*, 547 U.S. 813, 830, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)). Moreover, the statements were " 'made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial.' " *Melendez-Diaz*, 129 S. Ct. at 2532 (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 52). Consequently, the analysts were "witnesses" for Sixth Amendment purposes, and "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that [the defendant] had a prior opportunity to cross-examine them, [the defendant] was entitled to 'be confronted with' the analysts at trial." *Melendez-Diaz*, 129 S. Ct. at 2532 (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 54). The Court concluded, "The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against [the defendant] was error." *Melendez-Diaz*, 129 S. Ct. at 2542.

¶15 In so holding, the Court rejected a claim that the analysts' affidavits were " 'akin to the types of official and business records admissible at common law.' " *Melendez-Diaz*, 129 S. Ct. at 2533-40.[3] This was not so, the Court explained, because the class of official and business records

---

[3] The *Melendez-Diaz* majority also rejected several other arguments. First, it rejected the suggestion that laboratory analysts are not subject to the confrontation requirement because they are not "accusatory" or "conventional" witnesses. 129 S. Ct. at 2533-35. Second, it rejected the argument that forensic analysts should not have to testify live because their testimony would be the result of " 'neutral, scientific testing' " that is not " 'prone to distortion or manipulation' " and, thus, confrontation would be unlikely to affect their testimony. 129 S. Ct. at 2536. Third, it rejected the suggestion that the confrontation clause was satisfied because the defendant could have subpoenaed the analysts to testify at trial. 129 S. Ct. at 2540.

admissible at common law—and, thus, admissible without violating the confrontation clause—bore the hallmark of "having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Melendez-Diaz*, 129 S. Ct. at 2539-40. Thus, "[a] clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record." *Melendez-Diaz*, 129 S. Ct. at 2539. Conversely, what a clerk could not do, without an opportunity for confrontation by the defendant, was "what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Melendez-Diaz*, 129 S. Ct. at 2539. In that regard,

> [f]ar more probative here are those cases in which the prosecution sought to [introduce] into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it. Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched. Although the clerk's certificate would qualify as an official record under respondent's definition—it was prepared by a public officer in the regular course of his official duties— and although the clerk was certainly not a "conventional witness" under the dissent's approach, the clerk was nonetheless subject to confrontation.

*Melendez-Diaz*, 129 S. Ct. at 2539.

¶16 The State notes that, after the *Crawford* decision was announced, the Washington Supreme Court considered whether the Sixth Amendment was implicated by the admission of affidavits certifying the status of a defendant's driver's license. *State v. Kirkpatrick*, 160 Wn.2d 873, 161 P.3d 990 (2007); *State v. Kronich*, 160 Wn.2d 893, 161 P.3d 982 (2007). The court held that "the [United States Supreme] Court's express recognition that business records are not 'testimonial' provides a basis for concluding that public records, as well as certifications of the absence thereof, are also not testimonial evidence." *Kirkpatrick*, 160 Wn.2d at 876. Thus, the court held that neither a certifica-

tion by the DOL that the defendant did not have a driver's license on a particular date, *Kirkpatrick*, 160 Wn.2d at 887, nor a certification by the DOL that the defendant's driver's license was suspended on a particular day, *Kronich*, 160 Wn.2d at 904, was testimonial.[4]

¶17 These Washington Supreme Court decisions, however, predate the United States Supreme Court's decision in *Melendez-Diaz*. "When the United States Supreme Court decides an issue under the United States Constitution, all other courts must follow that Court's rulings." *State v. Radcliffe*, 164 Wn.2d 900, 906, 194 P.3d 250 (2008). Therefore, the intervening United States Supreme Court decision supersedes the Washington Supreme Court's decisions on this Sixth Amendment question.

¶18 Here, two agency records (copies of letters sent to Jasper by the DOL) were admitted into evidence, each revealing that the DOL intended to suspend Jasper's license if he did not respond to two earlier citations issued to him. These two records were admissible public records; Jasper is not contending otherwise. *See, e.g., United States v. Orozco-Acosta*, 607 F.3d 1156, 1163-64, (9th Cir. 2010) (warrants of removal); *United States v. Huete-Sandoval*, 681 F. Supp. 2d 136, 139-40 (D.P.R. 2010) (border crossing records from the ATS (automated targeting system) database); *Commonwealth v. Weeks*, 77 Mass. App. Ct. 1, 927 N.E.2d 1023 (2010) (court docket sheets); *Commonwealth v. Martinez-Guzman*, 76 Mass. App. Ct. 167, 920 N.E.2d 322, 325 n.3 (records from registrar of motor vehicles detailing defendant's driving history), *review denied*, 456 Mass. 1104, 925 N.E.2d 547 (2010); *Commonwealth v. McMullin*, 76 Mass. App. Ct. 904, 904-05, 923 N.E.2d 1062 (2010) (court records and driving records); *Fowler v. State*, 929 N.E.2d 875, 880 (Ind. Ct. App. 2010) (booking information printout).

---

[4] In so holding, our Supreme Court relied, in part, on a Ninth Circuit case that has been overruled as a result of *Melendez-Diaz*. *See United States v. Orozco-Acosta*, 607 F.3d 1156, 1161 n.3 (9th Cir. 2010).

¶19 Jasper contends, however, that the admission of the affidavit of the record custodian itself violated his right to confrontation because the affidavit is testimonial. The affidavit is not merely a certification that the agency records attached to the affidavit were true and correct copies of records possessed by the DOL. Without question, such a statement would be of the type approved by *Melendez-Diaz*, 129 S. Ct. at 2539; *see, e.g., United States v. Mallory*, 709 F. Supp. 2d 451, 453-54 (E.D. Va. 2010) ("the FedEx custodian's certification in this case does not comment on the content or meaning of the record [and] does not attempt to describe or decipher the content of the business record" but merely certifies that the attached documents are true copies of records kept in the regular course of business).

¶20 Instead, the affidavit herein contains ex parte statements made for the purpose of establishing the fact that Jasper was driving with a suspended license on the day of the collision. The affidavit first asserts that the affiant performed a diligent search, implying that the person searching the records knew what records to search for, knew how to find them in the database, and conducted the search correctly. The affidavit next states that Jasper's license was suspended on a particular day. This statement explains what the results of the records search revealed and what the witness concluded from the records searched. These statements are testimonial because they constitute factual assertions, intended to prove an element of a crime charged. They are not mere statements of the authenticity of the attached records themselves. The affidavit also contains an indirect assertion regarding the nonexistence of a record, impliedly asserting that no agency records exist indicating either that Jasper avoided suspension of his license by properly attending to the prior citations referenced in the two letters or that his license was ever reinstated following such a suspension. A statement assert-

ing that a particular record does not exist, when offered to establish that fact, is testimonial.[5]

¶21 In addition, unlike the DOL records attached to the affidavit, the affidavit itself did not exist within DOL's records independently of Jasper's prosecution. It is not a public record kept in the ordinary course of the administration of the DOL's affairs. Rather, the affidavit was plainly created in order to provide evidence against him for purposes of prosecuting him—a circumstance that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *See Crawford*, 541 U.S. at 51-52 (categorizing such statements as testimonial). Indeed, the affidavit declares that Jasper's driving status was "[s]uspended in the third degree," a statement not contained in either of the two agency records attached to the affidavit and submitted therewith.

¶22 For all of the above-described reasons, the affidavit is testimonial and implicates Jasper's Sixth Amendment right to confront witnesses against him.[6]

---

[5] *See, e.g., United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010) (finding admission of certificate of nonexistence of record, which indicated defendant had not received consent to reenter the United States, violated the Sixth Amendment); *Orozco-Acosta*, 607 F.3d at 1161 & n.3 (accepting the government's concession that defendant's Sixth Amendment right to confrontation was violated by the admission of a certificate of the nonexistence of a record, certifying that " 'after a diligent search . . . no record was found to exist indicating that [the defendant] obtained consent . . . for re-admission in the United States' " (third alteration in original)); *United States v. Norwood*, 603 F.3d 1063, 1067 (9th Cir. 2010) (accepting the government's concession that an affidavit prepared by an employee certifying that " 'a diligent search of the department's files failed to disclose any record of wages reported for [the defendant] from January 1, 2004 through March 31, 2007,' " violated the defendant's right to confrontation); *Tabaka v. District of Columbia*, 976 A.2d 173, 175-76 (D.C. 2009) (holding that the challenged "certificate of no-record" by a Department of Motor Vehicles official was testimonial); *Washington v. State*, 18 So. 3d 1221, 1224 (Fla. Dist. Ct. App. 2009) (holding that certificate of nonlicensure, attesting that a search of the state's licensing division records revealed that no one bearing the defendant's name held a license to engage in contracting, was admitted in violation of the defendant's Sixth Amendment rights).

[6] Our decision today that the affidavit herein contains testimonial statements is reinforced by the decisions of the courts of several other jurisdictions, which almost uniformly hold that affidavits from a variety of sources that are attesting to the meaning or content of particular records or certifying that no record exists are testimonial based on the reasoning of *Melendez-Diaz. See, e.g., Martinez-Rios*,

¶23 The State's arguments to the contrary are unavailing. The Sixth Amendment's prohibition on the admission of testimonial statements in the absence of an opportunity for confrontation is not limited to those statements that "creat[e] new evidence" or that "contain opinions of the exercise of judgment." Br. of Resp't at 21. Nor does the Supreme Court's decision in *Melendez-Diaz* purport to limit its application to affidavits "attesting to facts that occurred wholly after the crime"; the State's argument suggesting as much, Br. of Resp't at 17, is incorrect. Additionally, the availability to Jasper of the agency records themselves does

---

595 F.3d at 586; *Orozco-Acosta*, 607 F.3d at 1161 n.3; *State v. Alvarez-Amador*, 235 Or. App. 402, 405, 410-11, 232 P.3d 989 (2010) (holding that the defendant's Sixth Amendment right to confrontation was violated by the admission of an affidavit by an employee of the Social Security Administration attesting that two Social Security numbers " 'do not belong to [defendant]. These two numbers have been assigned by the Commissioner of the Social Security Administration to two other individuals whom [sic] both are now deceased' "); *Tabaka*, 976 A.2d at 175-76; *Washington*, 18 So. 3d at 1224 (admission of certificate of nonlicensure violated the defendant's Sixth Amendment rights because "[s]uch certificate is accusatory, was introduced to establish an element of the crime, was prepared at the request of law enforcement as part of its investigation in this case, and is evaluative in the sense that it represents not simply the production of an existing record, but an assertion regarding the results of an individual's search of a database or databases").

In contrast to these decisions, however, is the Maine Supreme Court's opinion in *State v. Murphy*, 2010 ME 28, 991 A.2d 35, wherein the court held that an affidavit from the secretary of state was not testimonial. *See also State v. Gilman*, 2010 ME 35, 993 A.2d 14, 24 (following *Murphy*). The affidavit attested that Murphy's "license or right to operate" was suspended, Murphy had been sent notice of suspension, and Murphy's " 'right to operate was under suspension' " on a particular date " 'because the statutory conditions for restoration had not been satisfied.' " *Murphy*, 991 A.2d at 36 n.2. The Maine court held that the right to confrontation was not implicated because (1) any comment in *Melendez-Diaz* regarding clerks' certificates of public records was dicta, (2) the affidavit reported neutral information, (3) such certificates are routinely prepared for nonprosecutorial purposes, and (4) cross-examination would have little utility. *Murphy*, 991 A.2d at 36 n.2, 42-44. To support its holding that the Secretary of State's certificate contained nontestimonial statements, the Maine court also relied on its belief that the state and federal courts also relied on its belief that the state and federal courts "have not completely discarded reliability as a factor when determining whether public records, such as those admitted in this case, are testimonial. . . . A reliability-based approach to public records is harmonious with both the purpose of the Confrontation Clause right and the modern realities associated with proving the content of routinely maintained motor vehicle records." *Murphy*, 991 A.2d at 43-44. However, the United States Supreme Court has explicitly rejected such a reliability-based approach: "[r]eliability is an amorphous, if not entirely subjective, concept" and, thus, "the only indicium of reliability sufficiently to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 63, 69.

not eliminate the confrontation clause violation presented by the admission of the affidavit.

¶24 The State also incorrectly asserts that the affidavit herein is merely authenticating DOL records, as approved of in *Melendez-Diaz*, contending that the "terse summary of the relevant body of records" does not prevent the affidavit from being admissible. But the affiant's "summary"—that Jasper's license was suspended in the third degree—is precisely the type of statement that implicates the confrontation right. The brevity of the statement is irrelevant to determining whether it is testimonial.

¶25 In addition, the majority in *Melendez-Diaz* expressly rejected the assertion that such affidavits fit within the historical exception for business records and, accordingly, do not implicate the confrontation clause. To the contrary, the Court noted that the business records exception does not include documents kept in the regular course of business when "the regularly conducted business activity is the production of evidence for use at trial." *Melendez-Diaz*, 129 S. Ct. at 2538. Contrary to the State's contention, documents that are " 'calculated for use essentially in the court, not in the business' "—such as the affidavit herein from the DOL custodian of records—do not fit within the historical business records exception. *Melendez-Diaz*, 129 S. Ct. at 2538 (quoting *Palmer v. Hoffman*, 318 U.S. 109, 114, 63 S. Ct. 477, 87 L. Ed. 645 (1943)).

¶26 The State also contends that cross-examination would be an empty formalism. The facts of this case highlight the danger of adopting such a cavalier view of the utility of confrontation; United State Supreme Court precedent precludes the adoption of such a view. As the Court stated:

> "To be sure, the [Sixth Amendment]'s ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . . Dispensing with confrontation because testimony is obviously reliable is

akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."

*Melendez-Diaz*, 129 S. Ct. at 2536 (second alteration in original) (quoting *Crawford*, 541 U.S. at 61-62). Significantly, the facts herein are especially adverse to the State's contention that cross-examination would be pointless: the date identified in the record custodian's affidavit, on which Jasper's license to drive was asserted to have been "[s]uspended in the third degree," is three years earlier than the date on which the State alleged that Jasper was driving with a suspended license. Even the dullest of defense attorneys might have come up with a question or two to ask a live witness in such a situation.

¶27 As in *Melendez-Diaz*, "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against [Jasper] was error." 129 S. Ct. at 2542.

III

¶28 Nevertheless, the error in admitting the affidavit does not automatically warrant reversal of Jasper's conviction. Error in admitting evidence in violation of the confrontation clause is subject to a constitutional harmless error analysis. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d. 705 (1967). Constitutional error is presumed to be prejudicial, and the State bears the burden of proving that the error was harmless. *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980). However, a constitutional error may be " 'so unimportant and insignificant' " in the setting of a particular case that the error is harmless beyond a reasonable doubt. *State v. Wells*, 72 Wn.2d 492, 500, 433 P.2d 869 (1967) (emphasis omitted) (quoting *Chapman*, 386 U.S. at 21-22). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error."

*State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). Where the untainted evidence alone is so overwhelming that it necessarily leads to a finding of the defendant's guilt, the error is harmless. *Guloy*, 104 Wn.2d at 426. A conviction should be reversed "where there is any reasonable possibility that the use of inadmissible evidence was necessary to reach a guilty verdict." *Guloy*, 104 Wn.2d at 426.

¶29 Here, the error in admitting the affidavit was not harmless: there is a reasonable probability that the jury found it necessary to consider the assertions in the affidavit in order to find Jasper guilty of driving while license suspended or revoked in the third degree.

¶30 To convict Jasper of driving while license suspended or revoked in the third degree, the State needed to prove that Jasper was driving in Washington, that his license was suspended at the time that he was driving, and that his license was suspended *because* he had failed to "furnish proof of financial responsibility for the future" or he had "failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation." RCW 46.20.342(1)(c).

¶31 Jasper testified that he believed that his license was suspended on the day of the collision, but he did not explain why his license had been suspended. A police officer also testified that, after he was arrested, Jasper stated that his license was suspended. But again, Jasper did not state the reason that his license was suspended. The two DOL records of letters sent to Jasper indicating that Jasper's license was going to be suspended in June 2007—about seven months before the collision—explain that Jasper's license would potentially be suspended because he had, as of the date of the letters, failed to "respond, appear, pay, or comply with the terms of" citations for driving without liability insurance and for driving without current licensing tabs.

¶32 However, this evidence alone is not sufficient to satisfy all of the elements of driving with a license sus-

pended *in the third degree.*[7] Without the affidavit, there is no evidence that, on February 14, 2008, Jasper's driving privileges were suspended *because of* some reason that satisfies the elements of driving while license suspended or revoked in the third degree. Jasper's own testimony and his statements to the police officer do not indicate the reason for his suspended license. Neither do the admissible driving records indicate that Jasper's license was actually suspended for the reasons stated or that his license remained suspended for those same reasons on February 14, 2008. That the defendant admitted to having a suspended license does not provide evidence regarding why his license was suspended or whether the defendant was eligible to reinstate the license, elements that alter the degree of

---

[7] The to-convict instruction provided in this case stated:

To convict the defendant of driving while license suspended or revoked in the third degree, as charged in Count II, each of the following three elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about February 14, 2008, the defendant drove a motor vehicle;

(2) That at the time of driving an order was in effect that suspended or revoked the defendant's driver's license or driving privileges because

(a) the defendant failed to furnish proof of financial responsibility for the future as provided by RCW chapter 46.29;

or

(b) the defendant failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or failed to comply with the terms of a notice of traffic infraction or citation, as provided in RCW 46.20.289;

and

(3) That the driving occurred in the State of Washington.

If you find from the evidence that elements (1) and (3), and any of the alternative elements (2)(a) or (2)(b), have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count II. To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (2)(a), or (2)(b) has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of elements (1), (2), or (3), then it will be your duty to return a verdict of not guilty as to Count II.

*See also* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 93.07, at 319-20 (3d ed. 2008).

crime charged.[8] In the absence of the statements in the affidavit, the remaining untainted evidence does not resolve beyond a reasonable doubt whether Jasper's license was ever actually suspended as threatened in the admissible driving records and whether it remained suspended for those same reasons on February 14, 2008. Therefore, the error in admitting the evidence was not harmless.[9] *Guloy*, 104 Wn.2d at 426. Accordingly, Jasper's conviction for driving while license suspended must be reversed.[10]

## IV

¶33 Jasper next contends that the trial court, by responding in writing to the jury's questions in his absence, violated both his constitutional right to be present during trial proceedings and CrR 6.15(f)(1). We disagree that Jasper's constitutional rights were violated, but we agree that the trial court's actions were inconsistent with the dictates of CrR 6.15.[11]

¶34 Pursuant to the confrontation clause of the Sixth Amendment, the due process clause of the Fourteenth

---

[8] The varying degrees of driving while license suspended or revoked are not lesser-included offenses of the greater degrees of the crime. Rather, they are inferior degree crimes. A person does not commit the lower degree crime when he or she commits the higher degree crime. *See* RCW 46.20.342. An offense is a lesser-included offense only where the elements of the lesser offense are included wholly within the greater offense, such that it is impossible to commit the greater without having committed the lesser. Unlike a lesser-included offense, an inferior degree offense may have an element that is not an element of the greater offense. *State v. Peterson*, 133 Wn.2d 885, 889-92, 948 P.2d 381 (1997).

[9] Jasper additionally contends that the error in admitting the affidavit also affects his conviction for felony hit and run because the prosecutor used the affidavit to argue that Jasper was generally irresponsible and avoided facing the consequences of his actions. However, Jasper mischaracterizes the prosecutor's closing argument. The error in admitting the affidavit did not taint Jasper's conviction for felony hit and run.

[10] Because this confrontation clause issue is dispositive with respect to Jasper's conviction for driving while license suspended or revoked, we need not reach Jasper's additional contention that the DOL affidavit constitutes an impermissible opinion on an ultimate issue. *See State v. Thiefault*, 160 Wn.2d 409, 414 n.1, 158 P.3d 580 (2007).

[11] We review de novo an alleged error in a trial court's response to a jury inquiry. *State v. Becklin*, 163 Wn.2d 519, 525, 182 P.3d 944 (2008) (citing *State v. Hacheney*, 160 Wn.2d 503, 512, 158 P.3d 1152 (2007)).

Amendment, and article I, section 22 of the Washington Constitution, a criminal defendant has the right to be present during all critical stages of a criminal proceeding.[12] *State v. Pruitt*, 145 Wn. App. 784, 798, 187 P.3d 326 (2008). A critical stage is one where the defendant's presence has a reasonably substantial relationship to the fullness of his or her opportunity to defend against the charge. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 920, 952 P.2d 116 (1998) (quoting *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)). Generally, in-chambers conferences between the court and counsel on legal matters are not critical stages except when the issues raised involve disputed facts. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994) (citing *United States v. Williams*, 455 F.2d 361 (9th Cir. 1972); *People v. Dokes*, 79 N.Y.2d 656, 595 N.E.2d 836, 584 N.Y.S.2d 761 (1992)).

¶35 Here, the issue raised by the jury's first inquiry involved a question of law regarding a driver's obligation to fulfill his or her duties pursuant to the statute. The issue raised by the jury's second inquiry involved a question of law regarding a definition for the "spirit of the law." No factual issue is raised by either of these questions. Because the jury's questions did not raise any issues involving disputed facts, the court's consideration of and response to the jury's inquiries did not constitute a critical stage of the proceedings. Therefore, Jasper's presence when the trial

---

[12] Jasper contends that his right to be present at different stages of the proceedings is broader under article I, section 22 of the Washington Constitution than under the Sixth Amendment of the federal constitution because the state constitution expressly protects a criminal defendant's "right to appear and defend in person, or by counsel." Const. art. I, § 22. However, this argument is unpersuasive. We recently conducted a *Gunwall* analysis (*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986)) of an argument similar to the one advanced by Jasper. *See State v. Martin*, 151 Wn. App. 98, 107-17, 210 P.3d 345 (2009), *review granted*, 168 Wn.2d 1006, 226 P.3d 781 (2010). We held that the state constitution does not protect a criminal defendant's right to be present during trial more broadly or more stringently than does the United States Constitution. "That the state constitution expressly guarantees that which the Sixth Amendment impliedly protects has no effect on the content of the rights protected under the parallel constitutional provisions." *Martin*, 151 Wn. App. at 110. Thus, our analysis of the defendant's right to be present is the same for both the Sixth Amendment and article I, section 22.

court resolved the jury's inquiries was not constitutionally required.[13]

 ¶36 However, Jasper correctly contends that the trial court violated CrR 6.15(f)(1) in responding to the jury's inquires. Criminal Rule 6.15 expressly requires that all parties be notified of any jury question posed to the trial

---

[13] Jasper affirmatively contends that both he and counsel were absent during the trial court's resolution of the jury's questions. "The jury gave both questions to the court at 1:42 p.m., and the court returned both answers to the jury at 1:50 p.m. The clerk's minutes otherwise detail the presence and involvement of the parties in matters conducted both on and off the record and yet the minutes contain no indication that the court discussed the jury's questions with counsel or Jasper." Br. of Appellant at 20-21.

The State agrees that the only indication that Jasper or his counsel were consulted is the trial court's standard preprinted response form, which states: "**COURT'S RESPONSE:** (AFTER AFFORDING ALL COUNSEL/PARTIES OPPORTUNITY TO BE HEARD)." The State concedes that "[t]he record is silent as to whether Jasper and/or his counsel were informed of the jury inquiry, except for the notation on the preprinted form, which stated that all parties had been afforded the opportunity to be heard." Br. of Resp't at 27.

In the event that contact with counsel was made by the trial court, the record is silent as to Jasper's counsel's suggested response, if any, to the jury inquiries. Similarly absent is any indication as to Jasper's counsel's response, if any, to the trial court's suggested answers to the jury's inquiries.

Faced with this record, the State does not urge affirmance based on compliance with the court rule. Rather, the State contends that "[a]ssuming, *arguendo*, that the trial court's failure to consult Jasper or his counsel before answering the jury's question was error, the error is harmless." Br. of Resp't at 32.

Accordingly, we assume the facts as urged by Jasper in resolving this issue.

Following the initial filing of this opinion, the State filed a pleading that we categorized as a motion for reconsideration. Appended to the pleading was a copy of a letter from the trial court to counsel. The gist of the letter is the trial judge's assertion that telephone contact with trial counsel was made upon receipt of the jury's inquiry. Jasper filed a response to the motion, correctly citing to applicable rules which preclude supplementation of the appellate record in this fashion.

To the extent that the State's purpose was to afford readers of this opinion with the trial court's recollection of circumstances, this mention should accomplish that purpose. Jasper is correct, however, in noting that our rules preclude any grant of relief to the State as a result of the motion or its attachment.

This all points to a greater issue. We are sympathetic to trial judges who receive a copy of the appellate opinion in a matter over which they presided and who believe that the factual recitation therein is incomplete. In this regard, however, we are subservient to the trial court. Only those matters about which the trial court allows or causes a record to be made are available for us to review. As has often been observed, for purposes of appellate review, there is virtually no difference between a trial event that did not take place and a trial event that took place but about which no record was made.

court during deliberation and be afforded an opportunity to comment upon an appropriate response:

> The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. The court shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record. The court shall respond to all questions from a deliberating jury in open court or in writing. . . . Any additional instruction upon any point of law shall be given in writing.

CrR 6.15(f)(1). "Any communication between the court and the jury in the absence of the defendant [or defense counsel] is error." *State v. Langdon*, 42 Wn. App. 715, 717, 713 P.2d 120 (1986).

¶37 Here, the trial court did not notify the parties of the contents of the jury's questions or provide the parties with an opportunity to comment upon an appropriate response, contrary to the requirements of CrR 6.15(f)(1). In this regard, the trial court erred.

¶38 Nevertheless, when such an error occurs, the defendant must raise the possibility that the communication between the judge and the jury was prejudicial and the State may demonstrate that the error was harmless. *State v. Bourgeois*, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997). Generally, where the trial court's response to a jury inquiry is "negative in nature and conveys no affirmative information," no prejudice results and the error is harmless. *State v. Russell*, 25 Wn. App. 933, 948, 611 P.2d 1320 (1980); *accord State v. Safford*, 24 Wn. App. 783, 794, 604 P.2d 980 (1979). In *State v. Johnson*, 56 Wn.2d 700, 709, 355 P.2d 13 (1960), our Supreme Court held that a trial court's written response to a jury inquiry without informing counsel was improper, but the error was not prejudicial because the trial court "communicated no information to the jury that was in any manner harmful to the [defendant]."

¶39 Here, the jury inquired whether "a person's 'obligation to fulfill all of the following duties' [is] dependent on their mental, emotional, or physical condition?"[14] The trial court responded, "Please re-read your instructions and continue deliberating. No further instructions will be given to this question." Jasper argues that he was prejudiced by the trial court's failure to inform the parties of the jury inquiry because, had he been given the opportunity to participate in forming a response, he would have requested that the trial court instruct the jury about an available statutory defense relieving a driver of the obligation to fulfill the statutory duties following a collision.

¶40 RCW 46.52.020 provides that a driver involved in a collision will not be criminally liable for failing to fulfill the driver's statutory obligations—including providing insurance information and assisting those who were injured in the collision—if that driver is "injured or incapacitated by such accident to the extent of being physically incapable of complying with this section." RCW 46.52.020(4)(d). Jasper contends that this statutory defense was available to him because there was testimony suggesting that Jasper hit his head during the collision and was confused and disoriented as a result.

¶41 "[A]dditional instructions on the law *can* be given during deliberation." *State v. Becklin*, 163 Wn.2d 519, 529-30, 182 P.3d 944 (2008). Whether to give further instructions to the jury after deliberations have begun is within the discretion of the trial court. *State v. Ng*, 110 Wn.2d 32, 42-43, 750 P.2d 632 (1988); *see* CrR 6.15(f)(1). However, "such supplemental instructions should not go beyond matters that either had been, or could have been, argued to the jury." *State v. Ransom*, 56 Wn. App. 712, 714, 785 P.2d 469 (1990). In *Ransom*, the appellate court held that the trial court erred in giving an additional instruction regarding accomplice liability after deliberations had begun

---

[14] Jasper assigns error to the trial court's response to the jury's second question but does not discuss this issue independently from the issues raised by the other inquiry and response. Accordingly, we do not separately address this assignment.

because "[t]he effect was to add a theory that the State had not elected and that defense counsel had no chance to argue." 56 Wn. App. at 714.

¶42 Here, neither party presented argument on the theory that Jasper was physically incapable of fulfilling his statutory obligations. This is unsurprising given that Jasper did not propose an instruction setting forth this statutory defense. Thus, even had the trial court properly informed the parties of the jury inquiry and even had Jasper proposed an additional instruction regarding the statutory defense, the trial court could not have properly given such an instruction. *Ransom*, 56 Wn. App. at 714; *cf. Becklin*, 163 Wn.2d at 530 (holding that trial court acted within its discretion when it gave the jury further instruction on the law because both parties had presented arguments on the theory).

¶43 The trial court erred by not informing the parties of the jury's inquiry and by not providing Jasper's counsel with an opportunity to participate in developing an appropriate response. But this error was harmless. The trial court's reply was not erroneous. The trial court's response was neutral, did not convey any affirmative information, and did not communicate to the jury any information that was harmful to Jasper. Moreover, the trial court could not have further instructed the jury on a new defense theory because the parties had not had an opportunity to address that theory in closing arguments. Therefore, Jasper was in no way prejudiced by the trial court's error. The State has satisfied its burden of proving that the trial court's error was harmless.[15]

---

[15] Jasper also contends that the trial court's response to the jury inquiry coerced a verdict because it stated that the jury should "continue deliberating." For this contention, he relies on *State v. Boogaard*, 90 Wn.2d 733, 585 P.2d 789 (1978). This argument fails.

CrR 6.15(f)(2) states, "After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate." In *Boogaard*, the trial judge, after inquiring about the history of the

V

¶44 Jasper's conviction for driving while license suspended or revoked in the third degree is reversed and the cause remanded for further proceedings consistent with this opinion. Jasper's conviction for felony hit and run is affirmed.

GROSSE and LEACH, JJ., concur.

After modification, further reconsideration denied December 1, 2010.

Review granted and review of issues raised in respondent's answer granted at 170 Wn.2d 1025 (2011).

vote, asked the foreman and each juror whether a verdict could be reached in a half hour. 90 Wn.2d at 735.

In this case, by contrast, the trial court did not question any juror about the nature of the vote or deliberations, there was no indication that the jury was deadlocked, and the trial court did not suggest that deliberations should continue for any particular period of time or should result in any particular verdict. The trial court's response in this regard was merely to state that the jury would not be getting any further instructions regarding their inquiry. This response was not coercive.