[No. 64203-1-I.   Division One.   March 14, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN CHRISTOPHER MARES, *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *James M. Whisman, Deputy*, for respondent.

¶1 ELLINGTON, J. — Brian Mares appeals his conviction for violation of a no-contact order with aggravating circumstances. He claims the court violated his Sixth Amendment right to confront witnesses by admitting a certified copy of the victim's driver's license as evidence of her identity. Mares claims he was entitled to confront the records custodian who certified the authenticity of that document and that the error is reversible.

*FACTS*

¶2 On November 12, 2008, King County Superior Court entered a no-contact order prohibiting Brian Mares from being within 500 feet of Brittany Knopff's person, residence, school, or workplace. The order was valid through November 12, 2009.

¶3 On April 29, 2009, Officer Jeffrey Shirey responded to a 911 call reporting a physical altercation outside a pub in Kent. Brittany Knopff was the victim in the altercation. Sarah Winnick, who had placed the 911 call, identified Mares as the perpetrator.

¶4 The following day, while Detective Tim Burnside was interviewing Knopff at her apartment, he saw Mares enter

the apartment and then flee out a back window. After a foot pursuit, Mares was arrested. He was charged with felony violation of a no-contact order with aggravating circumstances because the April 29, 2009 altercation was a crime of domestic violence.

¶5 Knopff did not attend the trial. To prove she was the person protected by the no-contact order, the State introduced a certified copy of her driver's license by way of certified letter from the Department of Licensing (DOL) records custodian:

> I, [name omitted], certify that I have been appointed Custodian of Records by the Director of the Department of Licensing and that such records are official and maintained by the Department of Licensing, Olympia, Washington. I further certify that the attached photocopy of the negative file and/or attached document(s) for KNOPFF, BRITTANY NICOLE is a true and correct copy(s).[1]

Both the copy of the license and the authentication letter bore the official seal of the State of Washington DOL. Mares objected to admission of the exhibit on confrontation clause grounds. The court overruled the objection.

¶6 The State also introduced a photograph Officer Shirey had taken of the victim of the altercation on April 29, 2009. Officer Shirey, Sarah Winnick, and one other witness testified that the woman in Shirey's photograph was the victim in the April 29, 2009 incident. Detective Burnside and Officer Shirey further testified the woman pictured on the driver's license of Brittany Nicole Knopff was the same woman involved in the April 29, 2009 incident.

¶7 The jury convicted Mares of felony violation of a no-contact order with aggravating circumstances.

## DISCUSSION

¶8 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Consti-

---

[1] Ex. 4.

tution guarantee criminal defendants the right to confront and cross-examine witnesses against them.[2] Statements of an absent witness may not be admitted if the statement is of a testimonial nature, unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.[3] Mares contends the license certification constituted a testimonial statement.

¶9 A challenge to the admission of out-of-court testimony under the confrontation clause is reviewed de novo.[4] The State has the burden to establish a witness's statements were nontestimonial.[5] Confrontation clause errors are subject to harmless error analysis.[6] "A constitutional error is harmless if the appellate court is convinced that any reasonable jury would have reached the same result in the absence of the error."[7] The State bears the burden of proving beyond a reasonable doubt that the error was harmless.[8]

¶10 Mares relies chiefly on *Melendez-Diaz v. Massachusetts*[9] for his contention that the license certification was testimonial. There, the defendant was charged with distributing and trafficking cocaine.[10] To prove the substance seized was cocaine, the prosecutor submitted "certificates of analysis" stating that the seized bags were " 'examined with

---

[2] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The Sixth Amendment to the United States Constitution applies to the states via the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[3] *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *see also Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

[4] *State v. Mason*, 160 Wn.2d 910, 922, 162 P.3d 396 (2007).

[5] *See United States v. Arnold*, 486 F.3d 177, 192 (6th Cir. 2007).

[6] *State v. Shafer*, 156 Wn.2d 381, 395, 128 P.3d 87 (2006) (Chambers, J., concurring).

[7] *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

[8] *Id.*

[9] 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

[10] *Id.* at 2530.

the following results: The substance was found to contain: Cocaine.' "[11]

¶11 The Court applied the three formulations announced in *Crawford v. Washington*[12] by which testimonial statements may be defined: (1) ex parte in-court testimony or its functional equivalent, such as an affidavit; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits; and (3) statements made under circumstances which objective witnesses would reasonably believe could be used at a later trial.[13]

¶12 The Court in *Melendez-Diaz* held the drug analysis certificates were "quite plainly" affidavits prepared specifically for litigation and were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' "[14] Further, in preparing the certificates, the analysts likely knew the certificate's sole purpose was as prima facie evidence that the substance in the defendant's possession was cocaine.[15] The Court concluded the analysts were testimonial witnesses against the defendant and he had the right to question their motives and methods at trial.[16] Quoting *Crawford*, the Court said, " 'To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.' "[17]

¶13 The Court distinguished the analysts' certificates from a certificate authenticating an existing official

---

[11] *Id.* at 2531.

[12] 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[13] *Melendez-Diaz*, 129 S. Ct. at 2531 (quoting *Crawford*, 541 U.S. at 51-52).

[14] *Id.* at 2532 (quoting *Davis*, 547 U.S. at 830).

[15] *Id.*

[16] *Id.* at 2532, 2534-35.

[17] *Id.* at 2536 (quoting *Crawford*, 541 U.S. at 61).

record.[18] Although prepared for use at trial, a certificate of authenticity is not testimonial because it attests only to the existence of a particular public record and does not interpret the record nor certify its substance or effect.[19] Thus, a records custodian may authenticate or provide a copy of an otherwise admissible record but may not create a record for the sole purpose of providing evidence against a defendant.[20]

¶14 Mares contends the certification in this case did more than merely authenticate the driver's license. He contends it also implicitly asserted that the records custodian performed a search to find the records for Brittany Knopff and then analyzed the results to determine whether the "Brittany Knopff" she found was the "Brittany Knopff" in this case.

██ ¶15 We reject this argument. Business and public records are generally admissible absent confrontation because, having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial, they are not testimonial.[21] The certification here attests only to the authenticity of a public record. It offers neither an interpretation of the record nor any assertions about its relevance, substance, or effect. The custodian did not attest that the license belonged to any particular "Brittany Knopff," nor that the person pictured on the license was the victim of a crime. Other witnesses made those assertions, and Mares had a full opportunity to confront them.

---

[18] *Id.* at 2538; *see also id.* at 2552-53 (Kennedy, J., dissenting) (discussing historical acceptance of copyists' affidavits certifying honesty and accuracy).

[19] *Id.* at 2538-39.

[20] *Id.* at 2539; *see also State v. Jasper,* 158 Wn. App. 518, 245 P.3d 228 (2010) (affidavit from DOL containing analysis and legal conclusion regarding records was testimonial and thus inadmissible without live testimony).

[21] *Melendez-Diaz,* 129 S. Ct. at 2539-40; *see also* RCW 5.44.040 (copies of records and documents filed in state departments admissible if certified under official seal of records custodian); ER 902(d) (certified copies of public record self-authenticating); *State v. Monson,* 113 Wn.2d 833, 836-37, 784 P.2d 485 (1989) (certified copy of driver's license is public record).

¶16 The license was admissible as a public record, and the custodian who authenticated the copy provided no testimonial statements in doing so.

¶17 Mares directs our attention to the recent decision in *State v. Jasper*, in which a different panel of this court rejected, as testimonial, the affidavit of a records custodian who concluded the defendant's license status was "suspended in the third degree."[22]

¶18 Jasper had driven his car across the center line of a roadway and collided with another vehicle.[23] He was charged with "driving while license suspended or revoked in the third degree."[24] DOL records indicated the department had mailed Jasper two notices stating that his license would be suspended if he did not appropriately respond to citations.[25] There was no record indicating he had responded to the citations, that his license had actually been suspended, or that it was suspended on the date of the collision.[26] The records custodian's affidavit stated, however, that "[a]fter a diligent search, our official record indicates that the status on February 14, 2005 was: Personal Driver License Status: Suspended in the third degree."[27]

¶19 This court reasoned that, in creating the affidavit, the affiant searched the DOL database, analyzed Jasper's record, and drew a conclusion from that information.[28] The affidavit was therefore not merely a certificate of authenticity of existing public records.[29]

---

[22] 158 Wn. App. 518, 531-32, 245 P.3d 228 (2010).

[23] *Id.* at 524.

[24] *Id.*

[25] *Id.*

[26] *See id.* at 524, 530.

[27] *Id.* at 525, n.1 (formatting omitted).

[28] *Id.* at 534-35.

[29] *Id.* at 535.

¶20 The opinion in *Jasper* quotes a passage from *Melendez-Diaz* regarding certificates attesting to the non-existence of records:

> Far more probative here are those cases in which the prosecution sought to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it. Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched. Although the clerk's certificate would qualify as an official record under respondent's definition—it was prepared by a public officer in the regular course of his official duties—and although the clerk was certainly not a "conventional witness" under the dissent's approach, the clerk was nonetheless subject to confrontation.[30]

The *Jasper* court relied upon this passage to support its conclusion that the DOL affidavit was testimonial in part because it contained "an indirect assertion regarding the nonexistence of a record."[31]

¶21 From this, Mares appears to contend that every certification of existing records is testimonial because it impliedly asserts the absence of other records. He contends the custodian in this case searched the DOL database, analyzed the results of that search, and concluded a particular person's driver's license—among an unknown number of choices—was the one requested by the prosecutor.

¶22 As pointed out above, this was neither the substance nor the implication of the custodian's affidavit. And even if these contentions were true, they would avail Mares nothing. Because she did not testify, the question was whether the victim of the crime was Brittany Knopff, the subject of the protection order. The witnesses who testified about the license found by the records custodian identified it as the

---

[30] *Melendez-Diaz*, 129 S. Ct. at 2539; *Jasper*, 158 Wn. App. at 529.

[31] *Jasper*, 158 Wn. App. at 531. We note there was no certificate of nonexistence of a record at issue in *Melendez-Diaz*, and no discussion of ER 803(a)(10), which specifically allows certificates attesting to the nonexistence of public records.

very one relevant to the case—that is, the Brittany Knopff pictured in the license photo was the victim of the crime. Whether other records existed but were not found was therefore irrelevant.

¶23 The certification here was nontestimonial and the court did not err in admitting it.

¶24 Affirmed.

BECKER and SPEARMAN, JJ., concur.