[No. 66694-1-I.   Division One.   September 17, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. TODD ANTHONY DOERFLINGER, *Defendant*, TYSON MONTE CLARK, *Appellant*.

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Donna L. Wise, Deputy*, for respondent.

¶1 GROSSE, J. — When the primary purpose of a radiologist's finding of a nasal fracture was to inform the treating physician of the nature of a patient's injuries in order to determine appropriate treatment, the radiologist's finding is not testimonial and the limitations of the confrontation clause do not apply to its admissibility. And when the radiologist's finding was made in the regular course of business and the radiology scan was ordered simply to rule out other injuries that might require additional treatment, the radiologist's finding confirming the treating physician's diagnosis of a nasal fracture was properly admitted under the exceptions to the hearsay rule for business records and statements made for purposes of medical diagnosis and treatment. Accordingly, we affirm.

## FACTS

¶2 On September 11, 2009, Tyson Clark and his friend Todd Doerflinger were at the Puerta Vallarta restaurant

and bar in Covington, Washington. At some point, the two went to the restroom and had an exchange of words with another patron, Stephen Palmer. According to Palmer, they asked him why he was pointing at them, Palmer asked if they were talking to him, and they responded, "[W]e're going to beat your ass." As Palmer attempted to leave the restroom, Doerflinger pushed him and Palmer pushed back. Clark then punched Palmer in the side of head, leaving Palmer dazed by the blow. Clark then grabbed Palmer by the back of the head, pushed his head down, and used his knee to strike him in the face. Palmer fell to the ground.

¶3 Police responded to a call about the fight and contacted Clark about a block away from the restaurant. Clark told an officer that as he and Doerflinger left the restroom, Doerflinger had an argument with a younger man. Clark claimed that he pushed the younger man after that man pushed Doerflinger, the man then came back and punched Clark, and Clark punched him in the jaw. The police officer did not observe any injuries to Clark's face or hands.

¶4 Police also contacted Palmer, whose eye was swollen shut and bleeding. Police also observed that he had a laceration on his eyelid, his nose was swollen, and he appeared dazed. Police did not observe any injuries to Palmer's knuckles or fist.

¶5 Palmer then sought medical treatment at Valley Medical Center. Dr. Larry Kadeg treated him at the hospital emergency room shortly after the assault. Dr. Kadeg saw that Palmer's right eye and nose were swollen and determined that there were at least two separate injuries. Dr. Kadeg suspected a fracture in the nose but was also concerned about other injuries to the underlying facial bone that would require surgery and more detailed care than a simple nasal fracture. To discern whether there were additional injuries, he ordered a computerized tomography (CT) scan. The radiologist's report confirmed a nasal fracture only.

¶6 The State charged Clark with second degree assault. A jury found him guilty as charged. The trial court imposed a standard range sentence of five months in jail. Clark appeals.

## ANALYSIS

¶7 Clark contends that the trial court violated his right to confrontation by allowing the treating physician to testify about the radiologist's findings without requiring the radiologist to testify. We disagree.

¶8 The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[1] " '[T]he principle evil at which the clause was directed was the civil-law system's use of ex parte examinations and ex parte affidavits as substitutes for live witnesses in criminal cases.' "[2] This denies the defendant the opportunity to test his accuser's assertions "in the crucible of cross-examination."[3] But not every out-of-court statement used at trial implicates the confrontation clause. The confrontation clause is implicated only by a witness who bears testimony:

> [T]he scope of the clause is limited to "witnesses against the accused—in other words, those who bear testimony. Testimony, in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."[4]

The United States Supreme Court listed three possible formulations for the "core class" of testimonial statements covered by the confrontation clause:

---

[1] U.S. CONST. amend VI.

[2] *State v. Jasper*, 158 Wn. App. 518, 526, 245 P.3d 228 (2010) (internal quotation marks omitted) (quoting *State v. Lui*, 153 Wn. App. 304, 314, 221 P.3d 948 (2009) *review granted*, 168 Wn.2d 1018 (2010)), *review granted*, 170 Wn.2d 1025 (2011).

[3] *Crawford v. Washington*, 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[4] *Jasper*, 158 Wn. App. at 526 (alterations in original) (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 51).

"[(1)] *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; [(2)] "extrajudicial statement . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; [(3)] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[5]

■■ ¶9 The Supreme Court has recognized that statements are not testimonial when made under circumstances objectively indicating that their primary purpose is to enable police assistance to meet an ongoing emergency.[6] The existence of an ongoing emergency is relevant in determining the primary purpose of such statements because the emergency focuses the declarants on something other than " 'prov[ing] past events potentially relevant to later . . . prosecution[s].' "[7] The Court has also recognized that "there may be other circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony," and that "[w]here no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the [c]onfrontation [c]lause."[8]

■■ ¶10 Here, the treating physician, Dr. Kadeg, testified that he suspected a fracture based on the swelling he observed around Palmer's nose and eye and assumed there were at least two separate injuries. He testified that he

---

[5] *Jasper*, 158 Wn. App. at 527 (alterations in original) (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 51-52).

[6] *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

[7] *Michigan v. Bryant*, ___ U.S. ___, 131 S. Ct. 1143, 1157, 179 L. Ed. 2d 93 (2011) (first alteration in original) (quoting *Davis*, 547 U.S. at 822).

[8] *Bryant*, 131 S. Ct. at 1155, 1166-67.

then ordered a CT scan because he was concerned that there were injuries in addition to the suspected nasal fracture:

[I]f I suspect someone has just a nasal fracture, and it's obvious, there is no reason to order x-rays, because we know that's there, and it is clinically obvious. I typically will order facial bone x-rays because I'm more concerned to exclude more injuries to the underlying bone, such as the orbit of the eye, make sure there is not a fracture there, because care — or other facial bones, because those often require surgery and a more detailed type of care than a simple nasal fracture. So I would have been concerned about other facial injuries such as an orbital fracture of the orbit of the eye, rather than just a nasal bone fracture.

The State then asked if he was less concerned about a nasal fracture than an orbital fracture and if that was the purpose of the CT scan. Dr. Kadeg responded:

That would be correct. Typically, I would have ordered the CT scan because I was concerned about other facial fractures, as well, and excluding those because sometimes the care can be more urgent than a nasal fracture.

¶11 Dr. Kadeg also testified that a radiologist reviewed Palmer's CT scan and made a determination of injuries that were apparent on the scan. He testified that the radiologist's findings were contained in a radiology report that is part of the patient's official medical record, but that he typically does not see radiology reports. Rather, he receives a "preliminary read" of those findings, which is less detailed than the radiology report and provides a brief diagnosis of injuries that are apparent on the scan. Dr. Kadeg then testified that he in fact conferred with the radiologist in Palmer's case and based on the radiology results and his own examination of Palmer, he concluded that Palmer's injuries consisted of a nasal fracture and a facial laceration.

¶12 Dr. Kadeg further described the nature of the nasal fracture using a diagram and, in doing so, testified that the

fracture Palmer sustained "was described by the radiologist as comminuted." Clark objected as to "hearsay, confrontation, and foundation." The State responded, "[I]t's a statement made for medical diagnosis, specifically physician for physician." Clark then called for a sidebar.

¶13 During the sidebar, Clark objected to Dr. Kadeg testifying about the radiologist's diagnosis of a comminuted fracture as inadmissible hearsay and violating his right to confrontation because the State did not call the radiologist as a witness. The State contended that it was properly admitted as a statement of medical diagnosis and the physician was permitted to rely on it for purposes of making his diagnosis. The State further contended that there was no testimony from the radiologist to which Dr. Kadeg testified; rather, Dr. Kadeg testified to his own opinion, which was based on all the information he gathered, one piece of which was his confirmation with the radiologist about the fracture. The court ruled that the testimony was admissible.[9]

¶14 Clark fails to show that Dr. Kadeg's testimony about the radiologist's findings amounts to testimonial evidence and is therefore subject to the confrontation clause. Objectively viewed, the primary purpose of the radiologist's statement that Palmer had a nasal fracture was to inform the treating physician of the nature of Palmer's injuries so they could be treated appropriately, not to prepare facts for litigation. By ordering the scan, Dr. Kadeg sought to discern if there were further injuries that warranted more serious immediate treatment, such as surgery. Nor were the radiologist's findings sworn or certified extrajudicial statements that the confrontation clause was designed to reach

---

[9] Clark also contended that the radiologist's report that was attached to Dr. Kadeg's report (offered as exhibit 13) was not admissible as a business record. The State agreed to remove those pages, and the court admitted only Dr. Kadeg's dictation, which included a reference to the CT scan as follows: "CT scan of facial bones shows comminuted old fractures noted, comminuted fracture of the nose, nasal bones."

as they were not prepared to serve as a substitute for in-court testimony.

¶15 The most recent opinion from the United States Supreme Court on the issue supports this conclusion. In *Williams v. Illinois*, the Court held that out-of-court statements testified to by an expert solely for the purpose of explaining the assumptions upon which the expert opinion rests fall outside the scope of the confrontation clause.[10] There, a forensic expert testified that a deoxyribonucleic acid (DNA) profile produced by an outside laboratory that analyzed a semen sample taken from a rape victim matched a DNA profile produced by the police lab that analyzed a sample of the defendant's blood. In doing so, the expert relied on out-of-court statements contained in the lab report about the DNA profile of the semen sample that was produced by the outside lab.[11] The Court concluded, "Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the [c]onfrontation [c]lause."[12] The Court further noted that the report was produced before a suspect was even identified and was not sought for the purpose of obtaining evidence to be used against the defendant, but for the purpose of finding a rapist who was on the loose.[13]

¶16 The Court also distinguished the DNA lab report from "the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the [c]onfrontation [c]lause was originally understood to reach,"[14] noting that the certified statements held to be testimonial

---

[10] ___ U.S. ___, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012).

[11] 132 S. Ct. at 2229-30.

[12] 132 S. Ct. at 2228.

[13] 132 S. Ct. at 2228.

[14] 132 S. Ct. at 2228.

statements in *Melendez-Diaz v. Massachusetts*[15] and *Bullcoming v. New Mexico*[16] were created for " 'the sole purpose of providing evidence against a defendant.' "[17] The Court noted that in *Bullcoming*, the forensic report certifying that the defendant's blood contained a blood alcohol concentration above the legal limit " 'contain[ed] a testimonial certification, made in order to prove a fact at a criminal trial,' "[18] and in *Melendez-Diaz*, the " 'certificates of analysis' " establishing that the substance found in the defendant's possession was cocaine were executed under oath before a notary.[19] Here, similar to *Williams*, the radiologist's findings are distinguishable from such testimonial statements. They were prepared not to establish Clark's culpability, but to determine the extent of Palmer's injuries. Nor were they prepared in the form of an extrajudicial sworn or certified statement to be used as a substitute for testimony in court.

¶17 The other cases upon which Clark relies are likewise distinguishable. The affidavits held to be testimonial in *State v. Jasper* were sworn statements of a records custodian that concluded that a driver's license was suspended and were created to serve as a means to establish a fact to be proved at trial.[20] In *State v. Hopkins*, child abuse findings were held to be testimonial because they were required to be reported to law enforcement by statutory mandate and were prepared as a part of an ongoing legal investigation.[21] Neither was the case with the radiologist's findings at issue here. Rather, they were simply a confirmation of a condition about which the treating physician

---

[15] 557 U.S. 305, 310-11, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

[16] ___ U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011).

[17] 132 S. Ct. at 2232-33 (quoting *Melendez-Diaz*, 557 U.S. at 323).

[18] 132 S. Ct. at 2232 (quoting *Bullcoming*, 131 S. Ct. at 2713).

[19] 132 S. Ct. at 2232 (quoting *Melendez-Diaz*, 557 U.S. at 308).

[20] 158 Wn. App. 518, 523, 531, 245 P.3d 228 (2010), *review granted*, 170 Wn.2d 1025 (2011).

[21] 134 Wn. App. 780, 791, 142 P.3d 1104 (2006).

inquired in order to determine appropriate treatment and serve the immediate needs of a patient.

¶18 Thus, Clark fails to establish that the primary purpose of the radiology finding was to create " 'an out-of-court substitute for trial testimony.' "[22] It is therefore not testimonial and the limitations of the confrontation clause do not apply to its admission. Indeed the Court noted in *Melendez-Diaz* that "medical reports created for treatment purposes . . . would not be testimonial under our decision today."[23] Accordingly, the confrontation clause claim is without basis.

¶19 Clark further argues that even if the radiologist's statements were not testimonial they nonetheless amounted to inadmissible hearsay. The State responds that they were admissible under the exceptions to the hearsay rule as a business record and a statement for purposes of medical diagnosis or treatment. We agree.

¶20 Business records that have been "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial" are not testimonial and therefore are not subject to the confrontation clause.[24] A trial court's decision to admit or exclude business records will be reversed only if it was a manifest abuse of discretion.[25] As provided in RCW 5.45.020, hearsay evidence contained in business records is competent evidence:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of

[22] *Williams*, 132 S. Ct. at 2243 (quoting *Bryant*, 131 S. Ct. at 1155).

[23] 557 U.S. at 312 n.2.

[24] *Melendez-Diaz*, 557 U.S. at 324.

[25] *State v. Ziegler*, 114 Wn.2d 533, 538, 789 P.2d 79 (1990).

the court, the sources of information, method and time of preparation were such as to justify its admission.

¶21 Business records are presumptively reliable if they are made in the regular course of business and with no apparent motive to falsify.[26] This is true of hospital records:

> As applied to hospital records, compliance with the act obviates the necessity, expense, inconvenience, and sometimes impossibility of calling as witnesses the attendants, nurses, physicians, X-ray technicians, laboratory and other hospital employees who collaborated to make the hospital record of the patient. It is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work or has supervision of its creation.[27]

As our courts have recognized, " 'A practicing physician's records, made in the regular course of business, properly identified and otherwise relevant, constitute competent evidence of a condition therein recorded.' "[28]

¶22 In *State v. Ziegler*, the court upheld the trial court's admission of lab reports ordered by a physician who did not testify when another physician testified about the reports from a common medical file.[29] The court held that the reports were properly admitted as business records because the nontestifying physician ordered the tests, the clinic relied on the lab's test results in treating patient, the record was in the clinic's custody as part of the patient's medical file, and the testifying physician stated that he was familiar with the laboratory and its testing procedures.[30]

---

[26] *Ziegler*, 114 Wn.2d at 537.

[27] *Ziegler*, 114 Wn.2d at 538.

[28] *Ziegler*, 114 Wn.2d at 538-39 (quoting *State v. Sellers*, 39 Wn. App. 799, 806, 695 P.2d 1014 (1985)).

[29] 114 Wn.2d 533, 540, 789 P.2d 79 (1990).

[30] *Ziegler*, 114 Wn.2d at 539-40.

¶23 Similarly, in *State v. Garrett*, the court upheld admission of a record made by an emergency room physician who did not testify when another treating physician testified about the record.[31] Citing *Ziegler*, the court held that the record made by the nontestifying emergency room physician was admissible under the business record exception to the hearsay rule because the testifying physician testified that she was familiar with the examination and testing procedures used by the other physician in treating the patient, that she routinely relied on such emergency room medical reports in treating her patients at the clinic, and that the report was made part of the common medical file.[32]

¶24 Likewise here, Dr. Kadeg testified that he was familiar with the scan procedure, that he routinely relied on radiology reports in treating patients, and that the reports were made part of the patient's official medical record. Accordingly, evidence of the radiologist's findings was properly admitted under the business record exception to the hearsay rule. Clark contends that the radiologist's findings constituted "a conclusion that involved a complex determination, made by a professional exercising his or her discretionary judgment," and therefore do not fall within the business records exception to the hearsay rule, which applies only to acts, conditions, or events.

¶25 But unlike the statements held inadmissible in the cases upon which Clark relies, the radiology findings to which Dr. Kadeg testified did not amount to an opinion on causation or fault.[33] As noted above, he ordered the CT scan solely to rule out any additional underlying facial bone injuries. In fact, Dr. Kadeg testified that he would not typically order a facial bone x-ray if he suspected only a

---

[31] 76 Wn. App. 719, 887 P.2d 488 (1995).

[32] *Garrett*, 76 Wn. App. at 722-23 (citing *Ziegler*, 114 Wn.2d at 539-40).

[33] Clark cites *Young v. Liddington*, 50 Wn.2d 78, 85, 309 P.2d 761 (1957); *In re Welfare of J.M.*, 130 Wn. App. 912, 924, 125 P.3d 245 (2005); *State v. Wicker*, 66 Wn. App. 409, 413, 832 P.2d 127 (1992).

nasal fracture because that type of injury is clinically obvious. Thus, the scan results about which he testified only confirmed the existence of a nose fracture, a condition he had already diagnosed.

¶26 The radiologist's findings were also admissible as statements made for medical diagnosis and treatment, providing an additional basis for affirming the trial court's admission of the evidence.[34] Under ER 803(a)(4), the following statements are admissible as an exception to the hearsay rule:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

To establish reasonable pertinence, "(1) the declarant's motive in making the statement must be to promote treatment, and (2) the medical professional must have reasonably relied on the statement for purposes of treatment."[35]

¶27 Statements admitted under this exception to the hearsay rule are commonly those made by a patient to a medical care provider, where reliability of the statements is established by the patient's incentive to be truthful in order to obtain proper care.[36] But Clark cites no case law holding that the statements may not be made from one medical provider to another to be admissible under this hearsay exception.[37] Here, it is without question that the radiologist's findings were made for purposes of diagnosis

---

[34] *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 19, 84 P.3d 859 (2004) (trial court may be affirmed if proper basis existed for admission of evidence even if trial court admitted evidence on improper basis).

[35] *Grasso*, 151 Wn.2d at 20.

[36] *State v. Bishop*, 63 Wn. App. 15, 24 n.8, 816 P.2d 738 (1991), *review denied*, 118 Wn.2d 1015 (1992).

[37] Indeed, neither Clark's opening nor reply brief addresses the State's argument that the radiologist's findings are admissible under the hearsay exception for statements made for medical diagnosis or treatment.

and treatment; this was the precise purpose for which Dr. Kadeg ordered the scan.

¶28 Finally, as the State further contends, any error in the admission of the radiologist's findings would have been harmless. A nonconstitutional evidentiary error is reversible only if " 'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.' "[38] And even under the more onerous constitutional standard, Clark fails to show that any error in the admission of the radiologist's findings warrants reversal.[39] Dr. Kadeg testified that based on his physical examination of Palmer, he concluded that his nose was fractured. The scan was ordered to rule out additional injuries, which in fact it did. Indeed, Dr. Kadeg testified that had he not suspected additional injuries, he would not have ordered the scan because the nasal fracture was "clinically obvious." Thus, absent any evidence to refute Dr. Kadeg's opinion that Palmer suffered a nasal fracture as a result of the assault by Clark, exclusion of the radiology findings confirming a nasal fracture would not have changed the outcome of the case. The jury still heard unchallenged expert testimony that Palmer suffered a nasal fracture.

¶29 We affirm.

SPEARMAN, A.C.J., and COX, J., concur.

Reconsideration denied November 9, 2012.

Review denied at 177 Wn.2d 1009 (2013).

---

[38] *State v. Brockob*, 159 Wn.2d 311, 351, 150 P.3d 59 (2006) (internal quotation marks omitted) (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

[39] A confrontation violation is constitutional error that is presumed prejudicial and imposes the burden on the State to prove it was harmless beyond a reasonable doubt. *Jasper*, 158 Wn. App. at 535.