IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>      v.<br><br>CHRISTOPHER LAVELLE BRINKLEY,<br><br>               Appellant. | No. 86459-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Christopher Brinkley appeals from the judgment and sentence entered on a jury's verdicts convicting him of five counts of felony violation of a no-contact order and one count of tampering with a witness, all found by special verdict to be crimes of domestic violence. He asserts that the trial court erred in certain of its rulings in limine, deprived him of the right to jury unanimity, and imposed an excessive sentence against him. The State concedes error as to the sentencing issue but disputes Brinkley's remaining assertions. We accept the State's concession, reject Brinkley's other contentions, and, accordingly, reverse in part, affirm in part, and remand.

FACTS

Christopher Brinkley and C were in a relationship for several years. In July 2022, a no-contact order (NCO) was entered protecting C from Brinkley. Around this time, Brinkley was 32 years old and C was 21.

In September 2022, Brinkley agreed to plead guilty in King County Superior Court to one count of assault in the fourth degree, one count of tampering with a witness, and two counts of misdemeanor violation of the July 2022 no-contact order (VNCO). Each count carried a special allegation of domestic violence based on Brinkley and C's relationship as intimate partners. C was the victim of the assault, the witness with whom Brinkley tampered, and the person protected by the NCO. The court entered judgment and sentence against Brinkley and a five-year NCO protecting C from Brinkley. The order prohibited Brinkley from, among other things, contacting C or coming within 1,000 feet of her residence. The order identified an address located in an apartment building in Seattle as the address from which Brinkley could, with civil standby, obtain his personal belongings. Brinkley signed the order.

Several months after the September 2022 NCO went into effect, in the early morning on February 3, 2023, a phone number previously associated with C dialed 911.[1] During the call, a male voice identified himself as "Bobby Fitzgerald" and stated that he had been in a physical fight with his girlfriend and did not know where she was.

C later arrived at her workplace bleeding from her mouth with a swollen right eye. C told one of her coworkers that her boyfriend had assaulted her. When Seattle Police Department (SPD) Officer Camille Wood arrived, C provided Wood with her address at an apartment building in Seattle but declined to provide further information. Notably, the home address that C provided was the same address as

---

[1] Given that the matter before us involves a challenge to the trial court's rulings in limine, many of the following facts are taken from the State's trial brief.

the one identified in the September 2022 NCO. Wood then visited the apartment building and spoke with C's neighbor who told Wood that she was familiar with C and her boyfriend Brinkley and had not seen Brinkley at the building in a few weeks.

The next day, February 4, C's neighbor sent Wood a text message indicating that Brinkley's car was parked at their apartment building. Wood drove over and noticed a man matching Brinkley's description, later identified as Brinkley, opening the trunk of a car. While equipped with a body-worn video camera, Wood approached Brinkley and told him that he was not free to leave and she knew he was "Christopher." Brinkley responded by running away from her and toward the apartment building. Wood chased after him, falling down in the process, and Brinkley entered the building and closed the entry door, with the door locking behind him. After Wood obtained a search warrant for C's apartment unit, several police officers entered the unit and, while inside, found and arrested Brinkley, seized several of his personal items, and discovered the cell phone from which the 911 call by "Bobby Fitzgerald" had been made.

On February 8, the State filed an information charging Brinkley with one count of felony violation of an NCO for his alleged conduct on February 3 against C. The charged count included a special allegation of domestic violence against an intimate partner, as well as a sentencing aggravator based on a pattern of domestic violence.

Around this time, following Brinkley's arrest and booking into jail, SPD Detective Kathryn Fitzgerald investigated a large number of telephone calls made

by Brinkley from jail. Fitzgerald determined, due to her familiarity with Brinkley and C from prior police investigations, Brinkley's most recent prosecution, and certain context clues, that the male voice on the calls was Brinkley and the female voice was C. Fitzgerald concluded that between February 4 and February 20 Brinkley had called C 187 times. Included among these calls was a call on February 8 in which he purportedly used coded language to instruct C to say that she did not live at the residence where he was arrested.[2]

On February 21, the State filed an amended information that added one count of tampering with a witness, for alleged conduct occurring on February 8 against C. This charge included a special allegation of domestic violence against an intimate partner, as well as aggravating factors of domestic violence and that the crime was committed shortly after Brinkley was released from incarceration.[3]

In late November, the State and Brinkley each filed trial briefs and motions in limine. Brinkley's trial brief indicated that his defense was general denial and he reserved on the issue of whether he would testify in his own defense. The next day, the State, by second amended information, charged Brinkley with four additional counts of felony VNCO, each with a special allegation of having been committed against an intimate partner, one count for alleged conduct on February 4, two for such conduct on February 8, and one stemming from conduct on February 9. Over the three days following the filing of the second amended information, the court heard arguments on the motions in limine, as well as an oral

---

[2] The State later offered this evidence at trial in support of its witness tampering charge.
[3] This is commonly referred to as the recent or rapid recidivism aggravator.

motion by the State to introduce Fitzgerald's testimony that Brinkley had telephoned C more than one hundred times from the jail.

Trial commenced on December 5. The State presented its case in chief over three days, and Brinkley rested his defense without presenting evidence. On December 12, the jury convicted him as charged and, in a special verdict form, found that he had committed each crime of conviction against an intimate partner.[4]

On March 8, 2024, the court entered judgment and sentence against Brinkley. The court sentenced him to a total concurrent term of confinement of 60 months (the statutory maximum sentence for the crime of felony VNCO) followed by 12 months of community custody for his VNCO convictions.

Brinkley timely appealed.

ANALYSIS

I. Trial Court's Rulings In Limine under ER 401, 403, and 404(b)

Brinkley asserts that the trial court abused its discretion with regard to certain of its pretrial rulings in limine. The trial court did not commit reversible error.

A. Standard of Review and Legal Standard for Evidentiary Challenges

The evidentiary rulings challenged on appeal arose from the trial court's application of ER 401, ER 403, and ER 404(b) to the admissibility of the proposed evidence identified in the motions in limine. We review a trial court's determination under those rules of evidence for abuse of discretion. *State v. Jennings*, 199

---

[4] Based on the record designated for our review, it appears that the State declined to submit to the jury whether it had proven the sentencing aggravators based on rapid recidivism and a pattern of domestic abuse.

Wn.2d 53, 59-60, 502 P.3d 1255 (2022); *State v. Sullivan*, 18 Wn. App. 2d 225, 234-35, 491 P.3d 176 (2021). "A trial court abuses its discretion if 'no reasonable person would take the view adopted by the trial court.'" *Jennings*, 199 Wn.2d at 59-60 (internal quotation marks omitted) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001).

ER 401 provides that "[r]elevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 403 sets forth that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

With regard to ER 404(b), this court has stated that

> As a general rule, "[a]ll relevant evidence is admissible." ER 402. One exception to this general rule is provided by ER 404(b), which states:
>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible *for other purposes*, *such as* proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake.
> In determining whether evidence of other misconduct is admissible under ER 404(b),
>> the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.
> *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

"This analysis must be conducted on the record . . . ." *State v. Arredondo*, 188 Wn.2d 244, 257, 394 P.3d 348 (2017).

*Sullivan*, 18 Wn. App. 2d at 234-35 (emphasis added) (some alterations in original).

B.     Police Officer Testimony Identifying C's Apartment

1.     Pretrial Rulings in Limine

Brinkley first contends that the trial court abused its discretion when it ruled in limine that proposed testimony by two law enforcement officers regarding their knowledge of the location of C's residence was admissible.  We disagree.

Here, the State's motion in limine read as follows:

> The State intends to admit the following prior bad acts under ER 404(b):
> . . . .
> c.     The fact that [SPD] Officers [Christopher] Hamerly, Wood, and [Edward] Grimmer all knew that [C] lived at the apartment that Brinkley was arrested in because they had been there previously to investigate cases involving Brinkley and [C].

This evidence was relevant, according to the State, because "[w]hen [the officers] arrived to investigate this case, they knew it was C's apartment because they had been there previously.  The fact that the apartment was C's apartment is highly relevant because Brinkley was arrested in the apartment in violation of the no-contact order."  Defense counsel opposed the motion, arguing that the evidence was not significantly probative because the State was already intending to call C's neighbor to testify regarding C's residence and the police officer testimony was prejudicial because it would show that the officers were familiar with C's residence in light of their prior police investigations involving Brinkley and C.

The court reasoned that the proposed evidence was an "example where you have something that's highly probative and highly prejudicial." The evidence was highly probative, according to the court, because "it [went] to an actual element that the State [was] required to prove" and "if the State is unable to prove that [C] lived in the apartment, the State will not be able to prove its case." The court further explained that the proposed evidence was "also very prejudicial" because of the possibility that uniformed police officer testimony reflecting that they had been to C's apartment previously could invite juror speculation of problems at the apartment unit beforehand and, therefore, lead the jury to draw an improper propensity inference against Brinkley.

The court then inquired into ways to reduce the potential for prejudice and ruled that the State may elicit testimony from Wood and Hamerly regarding the fact that they had previously been in the apartment but that the State was prohibited from further eliciting from them that their familiarity arose from a law enforcement investigation there. The court also ruled that the State would be limited to presenting the testimony of two officers on this issue, rather than three, because, according to the court, having three officers testifying about the same fact would be cumulative.

A reasonable person could take the view adopted by the trial court. The evidence establishing that the residence in which Brinkley was identified and arrested was highly probative of an essential element of the State's case: that Brinkley was in violation of a term of the September 2022 NCO protecting C from him, specifically that he was located within 1,000 feet of C's residence.

Furthermore, such a person could conclude that two officers' testimony was not cumulative (and therefore more probative) because it was circumstantial, not direct evidence, because the officers' prior knowledge of her residence was somewhat remote in time from when Brinkley was arrested inside of the residence, and because of the possibility of C's neighbor not being available to testify at trial. The court also properly exercised its discretion to reduce the prejudicial impact of the evidence by instructing the State to limit the testimony at trial on this topic to the officers' familiarity with C's address due to prior investigations and to omit mention that such investigations involved Brinkley and C specifically. Given all of this, the trial court did not abuse its discretion.[5]

### 2. Fitzgerald's Testimony at Trial

Brinkley next asserts that the trial court erred when it allowed Fitzgerald, a third law enforcement officer, to testify at trial that she was aware of C's address and, more specifically, that it was because of prior law enforcement investigations there. Because Brinkley did not object at trial, he has not preserved these issues for appellate review.

Washington appellate courts have long recognized that erroneous admission of evidence under ER 403 and ER 404 does not constitute an error of constitutional magnitude. *See, e.g., State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d

---

[5] Brinkley nevertheless asserts that the trial court erred by not issuing a limiting instruction at trial regarding the officers' testimony. However, "[a] request for a limiting instruction is a prerequisite to a successful claim of error on appeal." *State v. Russell*, 171 Wn.2d 118, 123, 249 P.3d 604 (2011) (quoting *State v. Noyes*, 69 Wn.2d 441, 447, 418 P.2d 471 (1966)). Here, the court invited counsel "to provide a limiting instruction if [they thought] it's wise to do so," and neither party did so. Thus, Brinkley's claim is unsuccessful. Additionally, in light of our resolution of this matter, we need not address Brinkley's subsequent contentions related to this ruling by the trial court.

951 (1986); *State v. Halstien*, 65 Wn. App. 845, 850, 829 P.2d 1145 (1992), *aff'd*, 122 Wn.2d 109, 857 P.2d 270 (1993). We have stated that a "nonconstitutional evidentiary error is reversible only if 'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *State v. Doerflinger*, 170 Wn. App. 650, 665, 285 P.3d 217 (2012) (internal quotation marks omitted) (quoting *State v. Brockob,* 159 Wn.2d 311, 351, 150 P.3d 59 (2006).

In addition, we have recognized that

> "[w]hen an evidentiary ruling is pursuant to a motion in limine, only the losing party is deemed to have a standing objection and need not specifically object at trial to preserve the issue for appeal." *State v. Finch*, 137 Wn.2d 792, 819-20, 975 P.2d 967 (1999) (plurality opinion) (emphasis omitted). When a party fails to object to testimony, an evidentiary error is not preserved for appeal. *Finch*, 137 Wn.2d at 819.

*State v. Henson*, 11 Wn. App. 2d 97, 102, 451 P.3d 1127 (2019). Such failure to object does not preserve the alleged error for appeal because it "deprives the trial court of this opportunity to prevent or cure the error." *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). Indeed, Washington "[a]ppellate courts will not approve a party's failure to object at trial that could identify error which the trial court might correct (through striking the testimony and/or curative jury instruction)." *Id*.[6]

Here, as discussed *supra*, the State's motion in limine requested a ruling on the admissibility of three law enforcement officers' testimony regarding their knowledge of C's apartment arising from their investigations therein. The court

---

[6] Furthermore, "[t]he decision not to object is often tactical." *Kirkman*, 159 Wn.2d at 935.

granted the motion in part but limited the State to presenting only two such officers' testimony on that issue and only that they had been to C's apartment, without mentioning that it was for the purpose of law enforcement investigation. Consequently, the State was the losing party as to the issue of the number of witnesses who could testify to C's residence and as to the scope of their testimony.

At trial, the State elicited testimony from Hamerly and Wood that they had previously been to the apartment in which Brinkley was arrested in this case and it was their understanding that the apartment was C's residence. However, during Fitzgerald's direct examination, she not only testified that she was familiar with Brinkley and C, but also that she knew C's address from "past cases," and, following the State's elicitation of further testimony, that she was aware of C's apartment due to "prior investigations." Brinkley did not object to either aspect of Fitzgerald's testimony that was in plain violation of the rulings in limine.

By not objecting, Brinkley has failed to preserve these issues for appellate review. He prevailed in obtaining rulings that limited the State's intended testimony and yet he did not afford the trial court with an opportunity to contemporaneously address the State's violations of those rulings. Given this, Brinkley has not preserved these errors for review, and we decline to consider them.[7]

---

[7] Brinkley's appellate briefing also mentions in passing the trial court's overruling of the State's objection to certain testimony that Brinkley's trial counsel sought to elicit on cross-examination. However, Brinkley did not present an offer of proof at trial, did not individually assign error to this ruling, and does not dedicate sufficient argument or analysis on appeal in support of the proposition that the trial court erred in this regard. We therefore do not consider this assertion. *See* RAP 10.3(a)(6).

C.      Police Officer Testimony Regarding "Hundreds of Calls"

Brinkley next asserts that the trial court engaged in reversible error when it ruled in limine that the portion of Fitzgerald's proposed testimony that she had listened to roughly hundreds of calls between Brinkley and C was relevant and admissible under ER 404(b).  Although the trial court erred when it determined that such testimony was relevant, we conclude that such error does not warrant reversal.

As set forth *supra*, "[i]n determining whether evidence of other misconduct is admissible under ER 404(b)," the trial court must, among other things, identify the purpose for which the evidence is sought to be introduced, determine whether the evidence is relevant to prove an element of the crime charged, and weigh the probative value against the prejudicial effect.  *Sullivan,* 18 Wn. App. 2d at 234.  In addition, "[r]elevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  ER 401.

Again, ER 403 sets forth that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence."  "'Cumulative evidence is additional evidence of the same kind to the same point.'"  *State v. Williams*, 27 Wn. App. 430, 441, 618 P.2d 110 (1980) (quoting *Roe v. Snyder,* 100 Wash. 311, 314, 170 P. 1027 (1918)), *aff'd*, 96 Wn.2d 215, 634 P.2d 868 (1981).

Here, prior to trial, the State sought a ruling from the court as to whether it could elicit testimony from Fitzgerald that she had listened to roughly hundreds of

calls allegedly made between Brinkley and C. Such testimony was offered for the purpose of identifying the speakers in the telephone calls that were the subject of the State's multiple felony violation of a no-contact order charges in this case.

Brinkley responded by arguing that testimony regarding the number of calls to which Fitzgerald had listened was minimally probative in establishing his and C's identities. According to Brinkley, the State already intended to introduce the audio of five phone calls alleged to be between him and C along with police officer testimony regarding those calls for the purpose of establishing the identities of the speakers. Brinkley additionally argued that Fitzgerald's proposed testimony would be cumulative and "the prejudicial impact of an officer saying that she listened to 100 calls that are not in—that are not being presented to the jury is—is massive."

The court ruled as follows:

> [T]he [c]ourt is going to admit the testimony, assuming that the rest of the foundation is laid because the [c]ourt does look at the ER 404(b) analysis. There is a request here that's being made for this information to be elicited in testimony for purposes of identification. Identification is one of the exceptions under ER 404. And then in weighing the probative value and the prejudice, it is important to the [c]ourt that this is a central issue in the case. And so, that makes it extremely probative. And that general defense is the denial, and so it is important in terms of the probative value.
> And then in terms of the prejudice, there could be prejudice for a defend—for a jury to hear that the Detective had listened to 100 phone calls.[8]

The probative value of Fitzgerald's testimony regarding the number of telephone calls was substantially outweighed by its potential for unfair prejudice. The court correctly reasoned that a central issue in the case was the identity of the

---

[8] The judge appeared to be simultaneously responding to a motion by defense counsel to exclude the detective's testimony on the basis of "unfair surprise." The court denied that motion.

parties who were speaking to one another on the telephone calls that formed the basis of several of the State's charges. However, in light of the other evidence regarding Brinkley's and C's identity that the State was to present at trial, the fact that a police officer had listened to hundreds of such calls both before and after the alleged conduct occurred was not, by itself, meaningfully probative. Indeed, it was not the *number* of calls that imparted relevance to Fitzgerald's overarching identification testimony, but rather, it was the inferences that she drew from having listened to those calls and context clues surrounding them that made the other portions of her testimony relevant as to their identities. In this light, the number of calls did not significantly tend to make their identities on the four phone calls underlying the pending charges more or less probable than it would be without the evidence.

Next, such testimony also presented a significant danger of unfair prejudice in the context of the charges before the jury and was unduly cumulative. Again, the State's charges against Brinkley involved multiple violations of a no-contact order in which Brinkley was alleged to have contacted C by telephone call in violation of express terms of the NCO. In this context, notwithstanding that Fitzgerald's testimony was offered for the purpose of identification, testimony that the defendant engaged in identical conduct hundreds of times, without those crimes being charged and without the State having the burden to prove such violations, created a substantial danger that the jury would draw an improper propensity inference from such evidence that would result in unfair prejudice to Brinkley. Furthermore, given the anticipated exhibits and testimony of the multiple

telephone calls in support of the charges in this matter, testimony that an officer had heard *hundreds of additional calls* was plainly "'additional evidence of the same kind to the same point'" and, therefore, cumulative. *See Williams*, 27 Wn. App. at 441 (quoting *Roe,* 100 Wash. at 314); ER 403. Thus, the trial court abused its discretion when it ruled that the portion of Fitzgerald's testimony regarding her estimate of the number of telephone calls was admissible under ER 404(b).

Nevertheless, Brinkley has not established that this error warrants reversal. As mentioned *supra*, erroneous admission of evidence under ER 404(b) does not constitute an error of constitutional magnitude, *see Smith*, 106 Wn.2d at 780, and "[a] nonconstitutional evidentiary error is reversible only if 'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *Doerflinger*, 170 Wn. App. at 665 (internal quotation marks omitted) (quoting *Brockob*, 159 Wn.2d at 351).

Brinkley does not challenge whether other substantial evidence was adduced at trial to support the jury's convictions for felony violation of an NCO arising from his telephone calls to C. It is therefore undisputed that the record contains evidence supporting that his telephone calls constituted repeated violations of the NCO. Moreover, the strength of that evidence supports a conclusion of harmless error here. In light of the other evidence adduced at trial, a single sentence of testimony, albeit by a uniformed law enforcement officer, is not enough to create a reasonable possibility that the jury's verdicts on the foregoing convictions would have changed. Accordingly, Brinkley does not establish an entitlement to appellate relief.

D. Wood's Body-Worn Video Camera Footage

Brinkley next asserts that the trial court abused its discretion when it ruled prior to trial that Wood's body camera footage was admissible under ER 403. The court did not err.

Brinkley submitted a pretrial motion in limine seeking to exclude any evidence pertaining to body-worn video camera footage. At the hearing on Brinkley's motion, he also sought to exclude Wood's testimony regarding her interaction with him outside the apartment building. His counsel argued that although such testimony was "relevant for the purposes of the charges are that he was allegedly someplace where he was not supposed to be, and he was apprehended there," "[a]nything else is just inflammatory and prejudicial."

The prosecutor responded that the State would not introduce body-worn camera footage of Brinkley's arrest but was intending to offer the footage from Wood's body-worn camera that captured the lead-up to Brinkley's arrest. The prosecutor then described the proposed video recording exhibit and argued its relevance:

> So, she goes up and talks to Mr. Brinkley, tries to talk to him about something else to distract him, and then tries to detain him. And that's when Mr. Brinkley runs towards the apartment door. And then Officer Wood falls.
> . . . .
> [I]t's just a short clip from initial contact to him going into the apartment and her falling down.

Thereafter, the prosecutor played the proposed exhibit, containing a roughly two-minute-long video recording, for the court and defense counsel.

- 16 -

Brinkley's counsel then argued that the video is "just prejudicial," did not "add anything to the fact that . . . he was apprehended," showed prejudicially escalating contact between Brinkley and Wood as the video progressed, and was "not probative of anything that's at issue with this charge." The prosecutor responded that the video had "high probative" value because it depicted, among other things, Brinkley running into the apartment building, a location from which he was expressly restricted.[9]

The court denied Brinkley's motion contingent on the State either redacting the portion of video in which Wood fell down after her interaction with Brinkley or ensuring, if Wood were called to testify on this topic, that her testimony would "very clearly" reflect to the jury that Brinkley did not assault her during that interaction.

A reasonable person could adopt the ruling by the trial court in this matter. The video recording showed Brinkley adjacent to the apartment building containing C's unit and his use of what appears to be a key fob to unlock and enter the building. Given that the September 2022 NCO prohibited Brinkley from being within 1,000 feet of C's residence, a reasonable person would understand this video recording to constitute highly probative evidence of his violation of that no-contact order, a violation on which one of the State's charges against him in this matter was predicated. The court also identified a significant potential for prejudice arising from the physical aspects of the interaction between Wood and Brinkley and conditioned the admission of the video recording on the State ensuring that

---

[9] The State also argued that the portion of the video showing Brinkley fleeing from Wood was probative of his consciousness of guilt. We emphasize that a suspect's flight from a crime scene or from law enforcement is, by itself, only marginally probative as evidence of consciousness of guilt. *See State v. Slater*, 197 Wn.2d 660, 667-68, 486 P.3d 873 (2021).

Wood's testimony clearly reflected that Brinkley did not assault her. The trial court plainly did not abuse its discretion in so doing.[10] Accordingly, Brinkley's contention does not establish an entitlement to appellate relief.

II.     Jury Unanimity on Witness Tampering Conviction

Brinkley next asserts that the trial court deprived him of the right to a unanimous jury verdict on his conviction for tampering with a witness because the State did not clearly elect the alternative means on which it was seeking his conviction for that charge, the evidence adduced at trial did not support each of the means, and no unanimity instruction was issued by the court to the jury. Because the State clearly elected the statutory means on which it relied for the conviction, we disagree.

We have recognized that

> [a]rticle I, section 21 of the Washington Constitution guarantees criminal defendants the right to a unanimous jury verdict. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). This may also include the right to express jury unanimity on the means by which the defendant committed the crime. *Id.* When a defendant "is charged with (and the jury is instructed on) an alternative means crime, . . . *a particularized expression of jury unanimity is required"* if there is insufficient evidence to support each of the means. *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

_____

[10] Brinkley somewhat ambiguously asserts that the trial court should have, sua sponte, considered the body camera footage evidence under ER 404(b) and issued a corresponding limiting instruction. Even if the trial court had such duties, "[e]vidence that is, without question, directly probative of the crime charged is not restricted by Rule 404(b)." 5 KARL B. TEGLAND, WASHINGTON PRACTICE, EVIDENCE LAW AND PRACTICE § 404.11, at 500 (6th ed.). The footage taken from Wood's body camera was not evidence of other (or prior) misconduct under ER 404(b); it was directly probative of the State's NCO violation charge against Brinkley. Therefore, his assertion fails.

Brinkley also rather vaguely contends that the trial court erred when it allowed Wood to testify at trial that she had a brief physical altercation with Brinkley outside of C's apartment building. Consistent with our analysis in Section I.A.1, because Brinkley did not object at trial to the testimony he now claims was in violation of the court's ruling in limine, he has not preserved this issue for appellate review. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

- 18 -

An alternative means crime is proscribed criminal conduct that the State may prove in various ways. *State v. Smith*, 159 Wn.2d 778, 784, 154 P.3d 873 (2007).

*State v. Lucas-Vicente*, 22 Wn. App. 2d 212, 218-19, 510 P.3d 1006 (2022) (emphasis added) (alteration in original). A particularized expression of jury unanimity as to an alternative means crime includes when the State "'elect[s] the act upon which it will rely for conviction.'" *State v. Carson*, 184 Wn.2d 207, 217, 357 P.3d 1064 (2015) (quoting *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984)). More specifically,

an election can be made by the prosecuting attorney in a verbal statement to the jury as long as the prosecution "clearly identifie[s] the act upon which" the charge in question is based. *State v. Thompson*, 169 Wn. App. 436, 474-75, 290 P.3d 996 (2012) ("[b]ecause the State clearly identified the act upon which the sexual motivation allegation was based" in its closing argument, "no unanimity instruction was necessary").

*Id.* at 227-28 (alterations in original).

Brinkley's assignment of error involves the crime of tampering with a witness. That offense is set forth at RCW 9A.72.120 and provides as follows:

(1) A person is guilty of tampering with a witness if [they] attempt[] to induce a witness or person [they have] reason to believe is about to be called as a witness in any official proceeding or a person whom [they have] reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child to:
        (a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
        (b) Absent [themselves] from such proceedings; or
        (c) Withhold from a law enforcement agency information which [they have] relevant to a criminal investigation or the abuse or neglect of a minor child to the agency.

We have interpreted this witness tampering statute as setting forth an alternative means crime. *See Lucas-Vicente*, 22 Wn. App. 2d at 219-20 (analyzing RCW

9A.72.120(1)).[11]  Therefore, as relevant here, so long as the prosecutor clearly elected to the jury the statutory subsection on which the State sought Brinkley's conviction, Brinkley's right to jury unanimity was preserved.

Here, in closing argument, the prosecutor argued as follows:

> So, Count [5] is Tampering with a Witness.  And this is the—the only count that has different elements, so I'm going to briefly go over those.  Again, the State has to prove that this happened in the State of Washington.  And I want to be crystal-clear about what call I'm referring to here.  For Tampering with a Witness, I'm referring to a call that occurred on February 8th.  I'm going to get the date correct for you guys.  It occurred on February 8th in the evening around seven p.m.  And this is a call where Mr. Brinkley says, "they don't live there anymore."  And it's—it's really noticeable when you listen to the call because he keeps saying it 'cause he's not sure if [C] got the message.  And he says, "They picked me up at my work, but they don't work there anymore."  "I don't think they work there anymore."  "They don't live there anymore."  "They don't work there anymore."  That's the total of what he says.
>
> It's clear, and Det. Fitzgerald testified to it, what Mr. Brinkley is talking about there.  *He's telling* [C] *to say*—to tell the police, *to tell the* [c]*ourt that she didn't live in that apartment anymore*.  He knows that that's the charge that is the biggest problem for him because he's arrested in her actual apartment.
>
> So, let's look at how that relates to Tampering with a Witness.  The State has to prove that on February 8th, 2023, Mr. Brinkley attempted to induce a person to testify falsely or attempted to induce a person to absent themselves, or attempted to induce a person to withhold from law enforcement information which she had relevant to a criminal investigation.  *The one that he does here is (a)*.  You can make an argument that he does (c) as well.  *But, he clearly does (a)*.  He's telling [C] to tell police and the [c]ourt that she doesn't live

---

[11] The State invites us to depart from our decision in *Lucas-Vicente* in light of Division Three's recent decision in *State v. Buck*, 34 Wn. App. 2d 188, 191-94, 567 P.3d 54 (2025), *review granted*, No. 104170-5 (Sept. 3, 2025).  In *Buck*, the panel held that the crime of interfering with the reporting of domestic violence, RCW 9A.36.150, was not an alternative means crime and expressly departed from our decision in *State v. Nonog*, 145 Wn. App. 802, 187 P.3d 335 (2008), *aff'd on other grounds*, 169 Wn.2d 220, 237 P.3d 250 (2010), which held that it was.  Although our decision in *Lucas-Vicente* relied in part on our decision in *Nonog*, we also independently relied on our statutory interpretation of the statute setting forth the crime of tampering with a witness.  *See Lucas-Vicente*, 22 Wn. App. 2d at 218-221 (citing RCW 9A.72.120(1); RCW 9A.36.150(1); *Nonog*, 145 Wn. App. at 812-13).  Therefore, *Buck* does not meaningfully impact our decision in *Lucas-Vicente*, we adhere to our decision therein, and we decline the State's invitation.

- 20 -

there anymore because he knows that's the most difficult charge for himself because he's arrested in her apartment.

I ask that you listen to that call and ask that you remember what Det. Fitzgerald testified about it. *And I ask that you find that he committed 1(a).*

(Emphasis added.)

The prosecutor clearly identified that the State was electing to proceed on its witness tampering charge under subsection (1)(a) of RCW 9A.72.120. Although the prosecutor undercut the clarity of his election by referring to "the police," thereby implicitly invoking subsection (c), and by expressly invoking subsection (c) later on, this does not signify that his election to the jury was unclear; the State expressly and specifically identified subsection (a) on three occasions during closing argument as the subsection supported by its evidence presented at trial and told the jury to convict Brinkley pursuant that subsection.

Furthermore, the prosecutor's only argument in closing in support of the State's witness tampering charge was that Brinkley had attempted to influence C to testify falsely to the court about where she was living. Such an attempt constitutes the inducement of a witness into giving of false testimony, which is conduct mentioned only under subsection (a) of the statute, whereas subsection (c) references only the withholding of information to law enforcement. Given all of this, the prosecutor clearly elected in closing argument the alternative means by which the State sought Brinkley's conviction. Thus, Brinkley was not deprived of the right to jury unanimity, and he does not establish an entitlement to appellate relief.[12]

_____

[12] Brinkley nevertheless asserts that the jury's submission of a question, one regarding the evidence on which it could rely with regard to the witness tampering charge, supports his

- 21 -

III.     Sentencing Error

Brinkley asserts that the sentencing court erred when it imposed total terms of confinement and community custody that exceeded the statutory maximum on his convictions for court-order violations.  The State properly concedes error in this regard.  Brinkley seeks reversal and remand for the sentencing court to either resentence him within the statutory requirements or reduce his term of community custody to zero months.  We accept the State's concession, reverse, and remand for correction of this sentencing error.

Affirmed in part, reversed in part, and remanded.

WE CONCUR:

---

determination the prosecutor did not clearly elect on which alternative means the State sought Brinkley's conviction.  However, as the State responds on appeal, Brinkley does not present citation to authority in support of the notion that the submission of a jury question on the charged count establishes that the prosecutor did not clearly elect.  We do not consider assertions unsupported by legal analysis or citation to authority.  *See* RAP 10.3(a)(6).